STATE of Missouri, Respondent,

v.

Clifford Eldis CLARK, Appellant.

No. KCD26553.

Missouri Court of Appeals,
Kansas City District.

May 6, 1974.

Willard B. Bunch, Public Defender, Sixteenth Judicial Circuit, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

PER CURIAM:

By jury verdict, the defendant was convicted of sodomy, Section 563.230 RSMo 1969, V.A.M.S., and sentenced to imprisonment for 25 years. Defendant has appealed his conviction, alleging three grounds of error. These are the refusal of the trial court to permit inquiry by defense counsel, on voir dire examination, regarding the verdict reached by the veniremen who admitted prior experience on juries, the trial court's refusal to dismiss the information, on the grounds that the time of the offense was not specifically stated, or to require the prosecution to state more specifically the time of the offense and the refusal of the court to instruct the jury on a specific time that the offense occurred.

The pertinent facts on the issue of the voir dire examination are as follows.

A venire of forty was summoned and examined for jury service. In response to questioning by the prosecutor, seven members of the panel answered affirmativly that they had previously served as jurors in criminal cases. Stating that he did not wish to know the verdict, the prosecutor then asked whether or not a verdict was reached. For three of the jurors, no verdict had been reached. Without objection from defense counsel, the prosecutor determined that one was a mistrial, another a hung jury. The result in the third trial was not revealed.

When defense counsel later attempted to question juror Kincheloe, who sat on a jury which *reached* a verdict, regarding the verdict reached, the prosecutor objected and was sustained. Later defense counsel requested that the record show his objection to the court's ruling denying discovery of the verdict, for each juror who had previously sat on a criminal case.

It is well settled that control of the extent of voir dire examination rests in the broad discretion of the trial court. State v. Huffer, 424 S.W.2d 776 (Mo.App. 1968); State v. Crockett, 419 S.W.2d 22 (Mo.1967). An appellate court will not interfere with this discretionary control of voir dire examination unless there is a demonstrable manifest abuse of that discretion and probable prejudice to the complainant. Olsten v. Susman, 391 S.W.2d 331 (Mo.1965); M & A Electric Power Cooperative v. True, 480 S.W.2d 310 (Mo. App.1972). The burden is upon appellant to demonstrate that the court abused its discretion. State v. Edmonds, 468 S.W.2d 685 (Mo.App.1971).

Defendant seeks to establish such an abuse of discretion because, in the language of defendant's brief, "defense counsel was thereby denied a germane piece of information thus preventing him from being able to determine the venireman's bias, and to intelligently exercise his preemptory challenges."

Defendant does not spell out the information that was "germane," but presumably, the fact of a guilty or not guilty finding is meant. Coupled with the reference to preemptory challenges, this could only mean that defendant is arguing that because a juror had participated in a guilty verdict he or she would, therefore, be suspect as a fair and impartial juror in the case on trial, and the failure of the trial court to permit this investigation constitutes an abuse of discretion. Such an abuse of discretion occurs "when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Edmonds, 468 S.W.2d 685, 688 (Mo.App. 1971). Tested by that standard, we cannot find that the trial court's ruling is contrary to the logic of the circumstances. To so hold would, in effect, confess the premise that all veniremen who participate in a guilty verdict are thereafter prejudiced against all defendants. To state the proposition is to demonstrate its fallacy. The trial court did not, in our view, act in an arbitrary and unreasonable manner. There being no abuse of discretion, the trial judge's ruling will not be disturbed.

The evidence offered on the substantive offense is as follows. The only evidence presented by the State was the testimony of the victim of the offense, E. C., a 12-year old boy. His testimony was that he initially met the defendant on August 15, 1972. The victim and a friend were given some money by defendant to bring him some ice cream from the store. Defendant told E. C. and his friend that they could come to his house any time they wanted. Also, defendant gave E. C. and his friend each a dollar to "watch his house" for burglars.

The next day, Wednesday, August 16, 1972, the date of the alleged offense, E. C. and his friend again went to defendant's home. During the afternoon, they went to defendant's house and played in the yard. After an undisclosed time, defendant arrived home with another man in a pick-up truck. The victim testified that the defendant arrived home wearing a "Texaco" shirt. Defendant's companion left after he and defendant had each consumed a beer. E. C.'s friend left soon thereafter, leaving E. C. and defendant alone in defendant's house. Seated in the kitchen in his underwear, defendant told E. C. of his military service and fighting ability. Defendant also showed him and read to him from books which the witness described as "dirty" and "nasty." When defendant stopped reading, he wanted E. C. to go into the bedroom with him. The third time that the victim was directed to "come on," defendant's voice was "real mean." Entering the bedroom, the victim was ordered to take off his clothes, again in a "mean" voice. After ordering E. C. onto the bed, defendant committed an act of sodomy by the insertion of his genital organ into the rectum of E. C.

After a minute or so, the victim was released, allowed to dress and go home. E.

C. did not tell his parents of the occurrence when he arrived home because he was scared. It was not until approximately a week later that he related the occurrence to his parents.

On cross-examination, additional information was elicited from E. C. He did not know the date of the offense, but with the help of his father and the prosecutor, he had "thought back the days," and been told the day of the incident. E. C. further testified that the incident occurred during the daytime before supper.

Defendant did not testify, but presented two witnesses for the purpose of establishing an alibi. The owner of the service station at which defendant was employed testified that during the week of August 16, 1972, defendant's working hours were from 7 a.m. to 5 p.m. Using his "payroll book," the witness stated that defendant was paid at the rate of $25 a day, and for the week of the offense, had earned $150. However, he was not able to testify as to the days or hours actually worked by defendant during the week. Nor could he be certain whether he had been at the station on August 16, 1972, to know that defendant had been at the station during defendant's scheduled working hours.

A co-worker of defendant at the station also testified on behalf of the defendant. This witness frequently gave defendant a ride to and from work and did drive a pick-up truck. He had occasionally stopped at defendant's for a beer after work. However, the witness "couldn't say" whether he had worked with defendant on August 16, 1972, or whether he had taken defendant either to or from work on that day.

■ The defendant's contention is that the time of the offense needed to be stated with particularity in order to permit the defendant to meet the charge with a defense of alibi.

This information, nonetheless, does specify a day certain and the defendant, by the State's allegation of the occurrence on the 16th of August, did have sufficient notice of the time of the offense as to permit the preparation of his defense of alibi. The information was amended to show this date on the day of trial, but it is apparent that defense counsel knew of the intent to so amend. In fact, the State went further in response to a request by the defense and indicated the proof would be that the offense occurred between 3 p.m. and "suppertime." The defendant's counsel even, with this disclosure as to the State's intended proof, argued that he would not be able to defend on a theory of alibi. The court then inquired of the State if the complaining witness would be there that day and stated to defense counsel that *after* the witness had testified, the court would, if requested, permit the defendant time to "obtain any witnesses."

■ The defendant concedes that the information need not specify the time of the offense where time is not of the essence. State v. Pigg, 312 Mo. 212, 278 S. W. 1030 (Mo. Banc 1925). The presence of the accused at the time and place of the offense is a question of fact on which the State has the burden of proof. State v. Reece, 325 S.W.2d 656 (Mo.1959). For that reason, it is also true that when alibi is interposed as a defense, time may be of "decisive importance" even though not of the "essence" of the offense. State v. Armstead, 283 S.W.2d 577, 580 (Mo.1955); State v. Bowles, 360 S.W.2d 706 (Mo. 1962). Those cases announce a rule of fundamental fairness that when an alibi is interposed, the time span within which the crime is alleged to have occurred must not be such as to place an impossible burden on the defendant to offer evidence of his whereabouts over an extended period of time. As noted above, prior to trial, the defendant knew the State's proof would be limited to after 3 p.m. on the 16th of August. After the complaining witness testified the time was further limited as being in "daylight hours," "before suppertime." If alibi evidence for that period of time on that date was available, it is hard to conceive that it could not have been presented,

particularly in view of the trial court's offer to permit time to locate any witnesses. Defendant has cited no case and none has been found that would even indicate error in this information. On the grounds specified, the point is overruled.

█ Defendant complains that the State's principal instruction burdens his alibi defense since it does not specify the *precise* time of the offense. The instruction requires a finding that the offense occurred on the 16th day of August, 1972.

Defendant cites State v. Smith, 212 S. W.2d .787 (Mo.1948) for the proposition that "an instruction which disparages an alibi defense is erroneous. Smith, supra, and cases cited therein, are all cases where the *alibi* is characterized as "well worn" or a "good defense in law" and the courts have sustained a claim of error on the grounds that the language of the instruction itself casts doubt upon the validity of the defense. No such complaint can be made as to the language of the instruction given in this case, and *Smith* and other like cases have no application.

The point is without merit and is denied.

Judgment affirmed.

All concur.