STATE of Missouri, Plaintiff-Respondent,

v.

James M. BOHANNON,
Defendant-Appellant.

No. 9559.

Missouri Court of Appeals,
Springfield District.

July 10, 1975.

Motion for Rehearing or Transfer
Denied August 4, 1975.

Application to Transfer Denied
Oct. 13, 1975.

Philip M. Moomaw, Public Defender, 25th Judicial Circuit, Rolla, for defendant-appellant.

John C. Danforth, Atty. Gen., Ellen S. Roper, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury found defendant James Bohannon guilty of forcible rape as defined and denounced by § 559.260, RSMo 1969, V.A.M.S.[1] The Second Offender Act, § 556.280, was found to be applicable and defendant's punishment was assessed at imprisonment for a term of five years.

The prosecuting witness was an 18-year-old married woman who had moved to Waynesville, Missouri, on September 7, 1972. Her husband was in military service and was stationed at Fort Leonard Wood.

The prosecutrix testified that on September 14, 1972, at approximately 2:00 p. m. she was walking toward the bus station when a car pulled alongside her and stopped. A "guy" (defendant) got out of the car, "grabbed" the prosecutrix, and put her in the car between himself and the driver, identified as one Roy Rogers. The prosecutrix did not resist because she was frightened and "froze" when the defendant seized her and put her in the car.

After she got in the automobile, the prosecutrix repeatedly asked the two men where they were taking her, what they intended to do, and asked to be taken to Fort Leonard Wood. She received no response. The driver proceeded through the town of Waynesville, passed what is referred to as the "Crocker Bridge" and finally turned off onto a gravel road. They then traveled "[a]bout a five minute drive" along the gravel road and stopped. Defendant got out of the car, opened a fence gate and Rogers "backed the car in". Defendant then closed the gate. The car was stopped in open country; prosecutrix testified that she saw no houses, "no people or no cars."

Rogers then started "making advances", as the prosecutrix put it, and she "just panicked." Rogers slapped the prosecutrix and ordered her to remove her clothing. The prosecutrix refused to disrobe, and Rogers told her "if [she] wasn't going to take it off, he was going to take it off for [her]." Prosecutrix finally removed her clothes, Rogers ordered her to lie down, and proceeded to have sexual intercourse with her, without her permission, she testified, and against her will.

After Rogers had finished he got out of the car, and while the prosecutrix was attempting to dress, defendant got in the car and told the prosecutrix to "take [her] clothes off." The prosecutrix again disrobed, defendant pushed her down in the back seat and had sexual intercourse with her. Prosecutrix testified that the defendant did so against her will, and that she submitted because she was frightened. After defendant had had sexual intercourse with the prosecutrix, he got out of the car, conversed with Rogers, and Rogers again got in the back seat with the prosecutrix. Rogers again had sexual intercourse with the prosecutrix against her will. Meanwhile, the defendant started the car and drove back toward Waynesville.

Rogers and the defendant stopped under a bridge and the prosecutrix dressed. There were two men fishing there, but the prosecutrix remained in the car and made no outcry. Rogers and the defendant finally took the prosecutrix to a gas station at St. Robert, Missouri. There the prosecutrix contacted a friend who notified the military police at Fort Leonard Wood.

The prosecutrix was taken to the post hospital where she was examined by a gynecologist. Prosecutrix told this physician that she had been raped, and consequently he made what he called "a complete examination of her from head to foot." His examination disclosed menstrual flow,

---

1. All references to statutes and rules are to RSMo 1969, V.A.M.S., and V.A.M.R., except where otherwise specifically noted.

which had started the day before, and a specimen of the vaginal fluid disclosed the presence of spermatozoa. There were no lesions of the external genitalia, none in the interior of the vagina, nor any bruises, scratches or cuts of any sort on prosecutrix's arms, face or any part of her body. The only signs of physical injury detected by the examining physican were tenderness of the abdomen and breasts, which the physician testified might have been incidental to the onset of menstruation.

James Cole, the chief of police at Waynesville, participated in the investigation of the crime charged. He testified that prosecutrix did not say to him that she was forced to have sexual intercourse, but said she was slapped. His observation of the clothing prosecutrix was wearing disclosed that it was not soiled or stained, and he observed no bruises or scratches on prosecutrix's person. Chief Cole did say that the prosecutrix was very emotional, nearly incoherent, when he questioned her. Other facts will be noticed in the course of the opinion.

■ In this court the defendant challenges the sufficiency of the evidence to support the judgment of conviction on the ground that the prosecutrix should have been corroborated. There are a good many cases which hold that when the evidence of the prosecutrix is of a contradictory nature, or when applied to the admitted facts of the case her testimony is not convincing but leaves the mind of the court clouded with doubt, she must be corroborated, or the judgment cannot be sustained, State v. Akers, 328 S.W.2d 31, 33[2] (Mo.1959); State v. Nash, 272 S.W.2d 179, 183[1] (Mo.1954); State v. Tevis, 234 Mo. 276, 284, 136 S.W. 339, 341[6] (1911), but these rulings are, in our opinion, only specific applications of the more general principle that it is an appellate judicial function to determine whether evidence is substantial as a matter of law and warrants inferences sufficient for submission of the case to the jury. State v. Nash, supra, 272 S.W.2d at 183[2–4]; State v. Henke, 313 Mo. 615, 633–634, 285 S.W.

392, 397[5] (1926). When the record is considered as a whole, certain inconsistencies or improbabilities appear which arguably mitigate against the conclusion that the prosecutrix was forcibly raped. She did not resist or attempt to escape when she was "grabbed" initially; she did not cry out or attempt to escape when the automobile was stopped under the Crocker Bridge; the examining physician found no visible signs of physical abuse or violence upon the prosecutrix's body; her clothing was neither torn nor soiled. Moreover, the prosecutrix testified that Rogers and the defendant stopped at the gas station in St. Robert long enough to be seen and to have their vehicle license number copied.

■ The other side of the coin is that the prosecutrix was, to a degree, corroborated. Her testimony that she had been raped three times was clear and unequivocal. Her assertion that she had submitted because she was frightened was corroborated by the Waynesville Chief of Police, who found that the prosecutrix "wasn't coherent" when he attempted to question her. Given the prosecutrix's immaturity (she was 18 years of age) and the fact that she was only 5 feet tall and weighed only 95 pounds, we cannot say that her testimony, taken with that of the examining physician and the Waynesville Chief of Police, was insufficient to permit reasonable minds to find defendant guilty beyond a reasonable doubt. The evidence of defendant's guilt was substantial, and the effect of such inconsistencies or improbabilities as appeared in the evidence was a question for the jury. State v. Cox, 478 S.W.2d 339, 341[3, 4] (Mo. 1972); State v. Nash, supra, 272 S.W.2d at 183[3]; State v. Hadley, 249 S.W.2d 857, 861[4] (Mo.1952).

The defendant's principal assignment of error is directed to the instructions given and refused. The State's main or principal instruction authorized a conviction if the jury found beyond a reasonable doubt that defendant "did . . . feloniously make an assault upon [the prosecutrix], a female person over the age of sixteen years, and

did then and there wilfully, forcibly and feloniously rape, ravish and carnally know [the prosecutrix]".

The defendant asserts that this instruction is "fatally defective" because it does not in terms submit the commission of the proscribed act "without the consent" or "against the will" of the prosecutrix.

The defendant further complains of the trial court's refusal to give his tendered Instruction D–A, which in substance advised the jury that if it found and believed beyond a reasonable doubt that defendant "inserted his sexual organ into the sexual organ [had carnal knowledge] of [prosecutrix]" and that defendant "did so against [prosecutrix's] will and after he caused her to submit by threats which caused her to fear physical violence to herself", it would find him guilty, but if the jury did not find and believe that defendant had carnal knowledge of the prosecutrix as hypothesized, then it would find the defendant not guilty. The defendant also tendered Instruction D–B, generally and abstractly advising the jury that consent is a defense to the crime charged unless the consent is procured by violence or threats of violence. He also maintains this instruction should have been given.

■ We note that this case was tried before the effective date of Rule 20.02, which requires the use of Missouri Approved Criminal Instructions, now acronymically referred to as MAI–CR. An extended discussion of the law under the former practice is obviously unnecessary, but we shall, at least, address the defendant's contentions directly. To begin with, there is no doubt the elements of "forcible rape" as defined and denounced by § 559.260 are 1) carnal knowledge of a woman; 2) by force, and 3) without her consent. State v. Garrett, 494 S.W.2d 336, 338[2] (Mo.1973); State v. Deckard, 426 S.W.2d 88, 90[1] (Mo. 1968). Nevertheless we find no authority for the proposition that prior to the promulgation of MAI–CR 6.40 it was necessary to submit the prosecutrix's want of consent by using the phrase "against her will" or "with-

out her consent". The statute proscribes "rape . . . by *forcibly ravishing* any woman of the age of sixteen years or upward" (our emphasis). The State's principal instruction submitted the offense charged in the language of the statute, and the word "ravish" implies force and means to have carnal knowledge of a woman by force and against her will. State v. Abron, 492 S.W.2d 387, 389[5, 6] (Mo.App.1973); 75 C.J.S. Rape § 1, p. 463 (1952). The State's verdict-directing instruction was not, in our opinion, "fatally defective" for the reason assigned. State v. Miller, 191 Mo. 587, 596, 90 S.W. 767, 770 (Mo.1905).

■ The meritorious question on this appeal is whether or not the trial court erred in refusing defendant's tendered instruction D–A. The State brushes this question aside by saying that because its main or principal instruction correctly declared the law, there was no need to give Instruction D–A. We cannot agree. As we have held, the State's main instruction covered the essential elements of the crime charged, but the defendant had a right to present these matters conversely or affirmatively from his own standpoint. There was evidence in this case, as we have noted, which tended to negative the want of consent which is an essential element of the State's case. The defendant was entitled to argue the inconsistencies of the State's case to the jury, State v. Hadley, supra, 249 S.W.2d at 861[5], and to offer a factual affirmative converse of the State's principal instruction. State v. McWilliams, 331 S.W.2d 610, 613[6, 7] (Mo.1960); State v. Chevlin, 284 S.W.2d 563, 567[11, 12] (Mo. 1955); State v. Fraley, 342 Mo. 442, 446, 116 S.W.2d 17, 20[2–4] (1938). It was not error to refuse defendant's tendered instruction D–B, which is at best abstract and cautionary, but Instruction D–A should have been given. For the error noted, the judgment is reversed and the cause is remanded.

All concur except FLANIGAN, J., not participating because not a member of the court when the cause was submitted.

On Alternative Motion for Rehearing or Transfer to the Supreme Court

The State has filed a vigorous alternative motion for a rehearing or for a transfer of the appeal to the Supreme Court, assuring this court that "[n]eedless to say, since the appellant's requested instruction was MAI-CR 6.40, it did not submit the negative of any of the essential elements of the state's case, including consent. On the contrary, it submitted the affirmative of each of the elements of the state's case, only in slightly different language than Instruction S-1-G." Citing no authority, the State confidently asserts that "[i]f the appellant had wanted to present the issue of lack of consent 'conversely or affirmatively from his own standpoint,' he should have submitted an instruction which stated that the jury must acquit 'unless it found that the prosecutrix had not consented' or 'if it found that she had consented.'"

The argument ignores the law as it it existed at the time this case was tried, and in addition positively misstates the record. As noted in the principal opinion, the case was tried before the effective date of Rule 20.02, and the use of MAI-CR was not mandatory. As the State concedes, our courts have for many years held that a criminal defendant is entitled to an instruction correctly stating the converse of the instruction upon which the State asks his conviction. *State v. Rutherford*, 152 Mo. 124, 134, 53 S.W. 417, 420 (1899). We are aware of no precedent antedating Rule 20.-02 which held that a criminal converse was required to be in any particular form, so long as it clearly submitted the converse of the facts and issues upon which the conviction was authorized. It was, of course, held in *State v. Fraley, supra,* 342 Mo. at 446, 116 S.W.2d at 20, that the practice of concluding the State's main instruction with the words "and unless you so find you will acquit" was not a sufficient reason to refuse a correct, separate converse tendered by the defendant, but the later holdings were uniform to the effect that it was reversible error to refuse a factual converse

of the State's main instruction, unless the State's instruction clearly submitted the converse of the facts and issues upon which the conviction was authorized. *State v. McWilliams, supra,* 331 S.W.2d at 613; *State v. Taylor,* 356 Mo. 1216, 1221, 205 S.W.2d 734, 737[8, 9] (1947); *State v. Ledbetter,* 332 Mo. 225, 228, 58 S.W.2d 453, 454[3] (1933).

In this case, the State's main instruction, No. S-1-G, was as follows:

"The Court instructs the jury that if you find and believe from the evidence in this case, beyond a reasonable doubt, that in Pulaski County, Missouri, on the 14th day of September, 1972, the defendant, James M. Bohannon, then and there being, did then and there feloniously make an assault upon one Maria Sucher, a female person over the age of sixteen years, and did then and there wilfully, forcibly and feloniously rape, ravish and carnally know the said Maria Sucher, you will find the defendant guilty, as charged. 'WILFULLY', as used in this instruction, means intentionally. 'FELONIOUSLY', as used in this instruction, means wickedly and against the admonition of the law; that is, unlawfully."

The other instructions cover the presumption of innocence and the credibility of the witnesses.

■ Instruction D-A, which the State says can in no event be considered conversive, reads as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 14, 1972, in the County of Pulaski, State of Missouri, the defendant inserted his sexual organ into the sexual organ of Maria Sucher, and

Second, that he did so against her will and after he caused her to submit by threats which caused her to fear physical violence to herself,

then you will find the defendant guilty of rape.

*However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense."* (our emphasis)

Granted, the instruction is literally MAI–CR 6.40, but it does not follow that, judged by standards prevailing before MAI–CR 6.40 was promulgated, the instruction cannot be considered a converse. Instruction D–A hypothesizes the facts necessary to conviction much more directly and clearly than the State's main instruction, and directly advises the jury that unless they find the facts to be as hypothesized, they will acquit. Unlike the bare statement "and unless you so find you will acquit", Instruction D–A particularly and specifically converses every element of the State's case. *State v. Dougherty*, 287 Mo. 82, 90, 228 S.W. 786, 788[7] (1921). The State's motion for rehearing or to transfer to the Supreme Court is wholly devoid of merit, and is denied.

All concur.