**STATE of Missouri, Plaintiff-Respondent,**

v.

**Charles T. HOBAN, Defendant-Appellant.**

**No. 51746.**

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 1, 1987.

Motion for Rehearing and/or Transfer Denied Oct. 6, 1987.

Application to Transfer Denied Nov. 17, 1987.

Michael M. Frank, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

DOWD, Judge.

Defendant appeals from the judgment of the trial court entered in accordance with a jury verdict which found defendant guilty of the offense of sodomy. Defendant was sentenced to serve a five year term of imprisonment. We affirm.

As the sufficiency of the evidence is at issue, a detailed statement of the facts is warranted. Defendant, a man in his fifties, was the neighbor of the victim, a young female child who was just nine years of age at the time of trial and seven years old when the incidents began. On June 29, 1985, the victim told her mother that defendant had touched her "on her bottom." The victim's mother notified the St. Louis County Police Department.

Detective Reinhardt of the St. Louis County Police Department testified that the victim told him that she had been touched between her legs by the man next door. The victim was able to specify Friday, June 28, 1985, as the date of one occurrence where defendant had placed his hands in her pants and fondled her. This was the day before she told her mother of the occurrences. Detective Reinhardt testified that the victim stated she had been fondled approximately ten times but could not identify when the other incidents occurred. The detective further testified that the victim stated on one occasion defendant had removed her pants and underwear and exposed his penis and placed it against her bottom.

The victim was taken to the Child Guidance Center where she met with a psychiatrist. There, the victim was shown anatomically correct dolls and was instructed as to the correct terms for the body parts of the male and female dolls. Only thereafter did the victim begin using the term vagina.

The psychiatrist testified the victim stated defendant had licked her vagina. He put his hands inside her pants and touched her and placed his penis on her in the area of her vagina. The most recent time it had happened was the day before she told her mother. She stated defendant had touched her in a sexual way maybe ten times but was not sure. The victim told the psychiatrist defendant was very gentle and the fondlings never resulted in her being hurt. She was not sure whether defendant's fingers had entered her vagina but that they may have somewhat. She finally told her mother of the incidents as she began to feel uncomfortable emotionally about the episodes.

The victim testified that she used to go to defendant's house to sell girl scout cookies or to ride a buggy owned by defendant. She testified that while in defendant's garage or basement, defendant would put his hands in her pants and move his fingers around touching her vagina. The victim stated that this occurred a number of times. Defendant told the victim that "this is our little secret" and told her that if it hurt her to tell him.

The victim related that these incidents occurred while she was in the second and third grade which would have been 1983 to 1985. The victim further testified that on one occasion, defendant put her hand on his penis and then rubbed his penis against her. On another occasion defendant licked her vagina. The victim was able to recall Friday June 28, 1985 as one specific occasion on which defendant had touched her in

a sexual way. This was the day before she had told her mother of the occurrences.

Doctor Diane Merritt testified that the victim's medical exam was consistent with the victim's account of what happened to her. There was no evidence of acute trauma to the victim's rectum or vagina which was consistent with the child's story that defendant was very gentle with her. According to the Doctor, the type of touching the victim related would not necessarily leave any marks. The victim's vaginal opening measurement was seven millimeters and was a normal vaginal size opening for a child her age. The Doctor testified that the opening was large enough for digital entry without resulting in tear.

Defendant was charged in three counts. Count I was for sodomy and alleged that defendant had deviate sexual intercourse with the victim on Friday, June 28, 1985. The jury acquitted defendant on this Count.

Count II charged defendant with attempted rape of the victim between June 1983 and September 1984. Count III charged defendant with sodomy and alleged that defendant had deviate sexual intercourse with the victim between June 1983 and September 1984. The jury found defendant guilty of both counts II and III. Thereafter, the trial court sustained defendant's after trial motion for judgment of acquittal on Count II, the charge for attempted rape.

The jury recommended a sentence of not less than five years on the Count III charge of sodomy and the trial court heeded the jury's recommendation in sentencing defendant to a five year term of imprisonment. Defendant appeals from the trial court's entry of judgment on the Count III conviction of sodomy.

In his first allegation of error on appeal, defendant contends the trial court erred in submitting Instruction No. 11 to the jury, which instructed as to the Count III sodomy charge, because the time of the offense was not sufficiently stated.

The instruction at issue directed the jury that if they believed defendant had deviate sexual intercourse with the victim between June, 1983 and September, 1984, a fifteen month period, they must find defendant guilty of sodomy. Defendant offered evidence that he was not at his home alone in the presence of the victim and introduced evidence that he was away from his home on business on certain dates within the period in which the offense allegedly occurred. Defendant contends the fifteen month period charged placed an impossible burden on his ability to account for his whereabouts and thus denied him the opportunity to assert an alibi defense. Defendant further contends he was denied equal protection of the law in that the law was applied to him in a discriminatory and prejudicial manner "solely because he was an adult and the alleged victim was a minor."

■ As the instruction mirrors the time period charged in the indictment, the sufficiency of the indictment is at issue. The primary purpose of an indictment or information is to give general notice to the defendant of the charge against him. *State v. Healey*, 562 S.W.2d 118, 130 (Mo. App.1978). Missouri Supreme Court Rule 23.01 governing indictments provides that the indictment or information shall state only the time of the offense charged "as definitely as can be done." Rule 23.-01(b)(3). The law does not demand impossible precision. The Rule assumes there will be situations where it will be impossible for the State to determine the exact date and time that a crime was committed and the indictment will charge an offense to have occurred during a span of time.

■ Section 545.030, RSMo 1986, expressly provides that an indictment shall not be deemed invalid "[f]or omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense." § 545.030.-1(5), RSMo 1986. Time is not of the essence in a sodomy case. *State v. Siems*, 535 S.W.2d 261, 266 (Mo.App.1976). Indictments and informations containing the following general allegations of the time of occurrence have been approved: "between the dates of March 15, 1976 and November 16, 1976," *State v. Murray*, 609 S.W.2d

192, 196 (Mo.App.1980) (eight month time span); "between January 1, 1979 and July 1, 1979," *State v. Allen*, 622 S.W.2d 275, 276 (Mo.App.1981) (six month time span); "during the months of June, July, and August of 1974," *State v. Healey, supra,* at 130 (three month period); "during the period from the 15th day of March, 1981, to the 14th day of April, 1981," *State v. Edwards*, 657 S.W.2d 343, 345 (Mo.App.1983) (thirty day period); "between May 1, 1984, and May 24, 1984," *State v. Woods*, 723 S.W.2d 488, 503 (Mo.App.1986) (twenty-four day period).

Defendant cites three Missouri appellate court decisions for the proposition that, where an alibi defense is asserted, a rule of fundamental fairness is invoked which provides that the time span within which a crime is alleged to have occurred must not be such as to place an impossible burden on defendant to establish his whereabouts over an extended period of time. *State v. Bowles*, 360 S.W.2d 706 (Mo.1962); *State v. Armstead*, 283 S.W.2d 577 (Mo.1955); *State v. Clark*, 509 S.W.2d 740 (Mo.App. 1974).

First of all, defendant's defense can hardly be characterized as an alibi defense. "Alibi means that defendant claims he was at another and different place than that at which the alleged crime was committed at the time it was committed." *Armstead, supra,* at 581. While it is true defendant contended he was away from home on business during certain dates within the charged period, he did not contend he was never at his home during the charged period. Instead, defendant's defense was that he was not alone at his home in the presence of the victim and that he was never in his basement with the victim. Defendant's defense is in the nature of a blanket denial of sexual activity with the victim as opposed to an alibi defense.

Furthermore, those cases cited by defendant to support a rule of fundamental fairness where alibi is interposed all involve indictments that charged the offense as occurring on a specific date. In the case at bar, the State could not have been any more specific as to the dates of occurrence.

The child victim was unable to narrow the time span to a shorter period than the time frame while she was in second and third grade.

In *State v. Bowles, supra,* a conviction for molesting a minor, the verdict directing instruction broadened the time period under which the jury could find defendant committed the offense from the specific date alleged in the indictment to anytime within three years of that date. Moreover, the prosecution in closing argument and all times prior thereto, had contended the offense occurred on the specific date alleged in the indictment. The Supreme Court held that the verdict directing instruction nullified the defendant's alibi defense for the specific date alleged in the indictment. *Bowles, supra,* at 709.

Likewise, in *Armstead, supra,* the indictment charged a specific date on which the offense was alleged to have occurred and the verdict directing instruction broadened the time under which the jury could have found defendant committed the offense. In *Armstead,* however, the court upheld the giving of the instruction. The indictment charged the offense occurred on December 23, 1953, and the State's evidence supporting the charge tended to show the offense was committed around midnight on that date. In the verdict directing instruction the time period under which the jury could find defendant committed the offense was slightly broadened to "on or about" the specific date alleged in the indictment. The defendant asserted an alibi defense that he was not at the place of occurrence between seven in the evening and seven in the morning each day of the week that included the specific date alleged in the indictment. The court held defendant's alibi defense was not nullified by the verdict directing instruction. *Armstead, supra,* at 582.

Similarly in *Clark, supra,* the information specified an exact date. The information was amended on the day of trial to show this specific date but the court found that the defendant was aware prior to trial that the State's proof would be limited to that date. The verdict directing instruction

required a finding that the offense occurred on the date specified in the information. The court held defendant's alibi defense was not hindered. *Clark, supra,* at 743–44.

In the case at bar, the verdict directing instruction paralleled the indictment which charged that the offense occurred between June 1983 and September 1984. Unlike *Bowles* and *Armstead,* the verdict directing instruction did not expand the time frame alleged in the indictment. Contrary to the factual pattern in *Clark, Bowles,* and *Armstead,* a specific date was never alleged in the indictment.

Where, as here, it is impossible for the State to determine the exact time and date that a crime was committed and thus the State does not rely on a specific day as the date of the alleged crime, this court in *State v. Siems, supra,* seemed to suggest that assertion of an alibi defense does not render time of decisive importance. *Siems* involved a conviction for sodomy against a twelve year old victim. The information charged the offense occurred "on or about the 23rd day of February 1972." At trial the victim was unable to remember the exact date of the offense. The verdict directing instruction authorized a verdict of guilty if the jury found the defendant committed the offense "during the month of February 1972." The defendant contended the instruction negated his alibi defense. The court distinguished the Missouri Supreme Court decision in *State v. Bowles, supra,* and upheld the instruction explaining:

> When a specific date is presented as the date of the alleged crime, an instruction covering a broad period of time may not be given which would nullify an alibi defense supported by substantial evidence.... *However, in this case the State did not rely on a specific day or week.* The young victim, for understandable reasons, did not report the crime for about four months and could not state precisely when it occurred.

*Siems, supra,* at 266 (citations omitted) (emphasis added).

The State in the case at bar could not have been any more specific as to the date and time of occurrence. The child victim was unable to narrow the time span to a period shorter than while she was in the second and third grade.

We find the more prudent rule of law to be reflected in those cases which expressly recognize that an alibi defense does not change the nature of the charges against the defendant or suddenly incorporate time as a necessary element of the offense. *Jackson v. United States,* 503 A.2d 1225, 1226–27 (D.C.App.1986); *State v. Bandi,* 338 So.2d 75, 76 (Fla.App.1976); *Bonds v. State,* 51 Md.App. 102, 442 A.2d 572, 575 (1982); *People v. Naugle,* 152 Mich.App. 227, 393 N.W.2d 592, 596 (1986); *State v. Clark,* 682 P.2d 1339, 1345 (Mont. 1984). Any other rule would too often preclude prosecution of crimes involving child victims as here where the crimes are not discovered until some time after their commission. Leeway is necessary in charging sexual abuse and sexual intercourse with minors because children who are the victims of abuse may find it difficult to recall precisely the dates of offenses against them months or even years after the offense has occurred. The absence of such a rule would give rise to an untenable tactic. "A defendant would simply have to make the assertion of alibi in order to escape prosecution once it became apparent that a child was confused with respect to the date of a sexual assault." *Naugle, supra,* at 596.

The more prudent approach would not allow lack of specificity on the part of the State, where it is impossible for the State to be more precise, to act as an absolute bar to prosecution. The defendant is adequately protected by the requirement that the trier of fact must find defendant guilty beyond a reasonable doubt. The trier of fact should be allowed to weigh the witness's inability to specify the exact day and time of the alleged crime, and the subsequent inability of the defendant to establish an alibi defense over so long a period of time, in determining

whether the defendant is guilty beyond a reasonable doubt. *Bonds, supra,* at 575.

We further find defendant's equal protection challenge to be without merit. Defendant contends he was denied equal protection of the law, as guaranteed by the fourteenth amendment, as he contends he was treated differently than defendants charged with the same crime against adult victims.

The rules of law that an indictment need only state the alleged time of the offense "as definitely as can be done," Rule 23.-01(b)(3), and that an indictment will not be deemed invalid for failing to state the time the offense was committed where time is not of the essence of an offense, § 545.-030.1(5), RSMo 1986, are equally applicable whether the victim is an adult or child. That the necessity for the rules is usually triggered in cases involving child victims does not negate their applicability in other situations.

Furthermore, any special leeway allowed in the prosecution of crimes involving child victims is related to a legitimate state interest in protecting children from abuse who, because of their tender age, are unable to specify the exact date the crime against them occurred.

The indictment was sufficient to give defendant general notice of the charge against him. We find no error in allowing defendant to be charged and tried under the indictment or in the submission of the verdict directing instruction that mirrored the indictment.

In his second and third points on appeal defendant asserts error in the trial court's control over closing argument and in the court's determination of when the case would be submitted to the jury.

 The trial court is given broad discretion in controlling closing argument, *State v. Newlon,* 627 S.W.2d 606, 616 (Mo. banc 1982), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982), and in determining the time at which a jury may properly deliberate. *State v. Garrett,* 595 S.W.2d 422, 432 (Mo.App.1980). Reversal will be had only if an abuse of discretion is shown. *Newlon, supra.* We find no abuse of the trial court's discretion. Points two and three are denied.

In his fourth point on appeal, defendant contends the trial court erred in prohibiting defendant from introducing into evidence an amendment by the State regarding the time frame alleged in the Count I sodomy charge, for which defendant was acquitted. The amendment, made in response to defendant's discovery request for specificity, amended the alleged time of occurrence of the Count I charge from between 8 a.m. and 5 p.m. on June 28, 1985, to between noon and 5 p.m. on that same date. Defendant contends the amendment was relevant to indicate a change in the victim's recollection and went to her credibility.

 We find defendant's contention without merit. "A trial judge has wide latitude in ruling on whether to admit or exclude evidence adduced by the parties at trial." *State v. Clark,* 711 S.W.2d 928, 932 (Mo.App.1986). Absent a clear abuse of the trial court's discretion, an appellate court will not interfere with a ruling on the admission or exclusion of evidence. *Id.*

The State's responses to discovery, indicating a change in the time frame of the offense, were not statements made by the victim. Even though the court refused admission of the State's amendment, we fail to see any prejudice to defendant as he was allowed to cross-examine the victim as to her enhanced recollection of the time frame in which the offense alleged in Count I took place. We find no abuse of the trial court's discretion. Point denied.

In his fifth point on appeal, defendant challenges the sufficiency of the evidence to support the conviction on the Count III sodomy charge. Defendant contends there was no evidence that defendant touched the victim's vagina within the charged period of between June 1983 and September 1984.

In reviewing the sufficiency of the evidence to support a conviction, "we accept as true all evidence whether circumstantial or direct, tending to prove defendant guilty together with all reasonable inferences

supportive of the verdict." *State v. Brooks*, 618 S.W.2d 22, 23 (Mo. banc 1981). Those portions of the record contrary to the verdict are disregarded as our function is not to weigh the evidence but rather to determine whether there was sufficient evidence from which reasonable persons could have found defendant guilty.[1] *Id.* at 23.

In Count III, defendant was charged with sodomy under § 566.060.3, RSMo 1986, which provides: "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." "Deviate sexual intercourse" is defined as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." § 566.010.1(2), RSMo 1986.

Defendant contends the only evidence that defendant touched the victim's vagina was the victim's own testimony that related to the June 28, 1985, touching charged in Count I for which defendant was acquitted. A review of the record indicates otherwise.

In addition to the victim's testimony as to the offense alleged in Count I, that defendant touched her vagina with his fingers on June 28, 1985, the victim also testified these touchings occurred on other occasions while the victim was in second and third grade. The victim was in second and third grade during the years 1983 through 1985 which included the period charged in Count III. The victim testified defendant would put his hand down the front of her pants and move his fingers around. In addition, the victim testified defendant on one occasion licked her vagina. The victim testified she thought this occurred while she was in second grade.

■ "[T]he testimony of a prosecutrix is alone sufficient to sustain a sodomy charge without other corroboration unless her testimony is so contradictory or in conflict with physical facts, surrounding circumstances and common experience as to be unconvincing." *State v. Smith*, 679 S.W.2d 899, 902 (Mo.App.1984); *see also, State v. Edwards*, 699 S.W.2d 39, 40 (Mo. App.1985). The testimony of a prosecutrix is not to be deemed unconvincing where inconsistencies exist as to testimony on minor points of a collateral nature that are not essential to the case. *Smith, supra,* at 902. Discrepancies must appear as to essential elements of the crime of sodomy and leave the mind of the court clouded with doubt before corroboration of the victim's testimony will be required.[2] *Id.*

■ We find nothing inconsistent or contradictory in the victim's testimony as to the essential elements of the offense of sodomy. The victim's testimony was consistent with the physical facts. The medical doctor who examined the victim testified that the results of her examination were consistent with the victim's account of what had happened to her. The type of touching related by the victim would not necessarily leave any marks and the size of the victim's vaginal opening would allow for digital entry without resulting in tear.

The victim's trial testimony of what had happened to her was consistent in all relevant respects. While the victim displayed what could be characterized as a habit of speech at trial in that she often answered questions with an "I guess" or "I think so," in most instances such responses were followed by a definitive "yes." The victim's testimony imparts a "style of speech" characteristic of a nine year old child testifying as to an embarrassing subject matter

---

1. The dissent disregards our standard for reviewing the sufficiency of the evidence by ignoring all evidence supportive of the verdict and overemphasizing evidence to the contrary; evidence which the jury apparently chose not to believe.

2. The dissent's analysis of this issue appears to require corroboration of the prosecutrix's testimony before a determination is made that her testimony is so contradictory as to leave the mind of the court clouded with doubt. Dissenting Opinion at 12. We further note that the rule requiring corroboration of a prosecutrix's testimony where that testimony is contradictory has been criticized and has mainly been limited to contradictory in-trial testimonial statements of victims going to the heart of the offenses. *See, State v. Ellis*, 710 S.W.2d 378, 380–81 (Mo.App. 1986); *see also, State v. Platt*, 496 S.W.2d 878, 880–81 (Mo.App.1973).

rather than any indecisiveness on the part of the victim.

The victim at trial was resolute in what had happened to her. Although she could not specify a precise time that the touchings occurred, she was able to definitively designate them as occurring within the charged period: "It happened in second and third [grade], *I, know.*" Defendant attempted to impeach the victim's testimony with a statement made by the victim in a deposition in which she responded she could not remember whether defendant had touched her while she was in the second grade. The prosecution rehabilitated the victim's testimony by referring to other passages of the deposition in which the victim testified defendant did· touch her while in the second grade. The prosecution provided the victim's statement in full context, showing the likely confusion of the victim as the response, that she could not remember whether defendant had touched her in the second grade, followed a barrage of questions on how many times she was touched during each school year.

The testimony of the victim does not leave the mind of the court clouded with doubt so as to require corroboration of the victim's testimony. The victim's testimony alone was sufficient to sustain the conviction. Point denied.

▮▮▮▮ In his final point on appeal defendant contends the trial court erred in failing to give defendant's offered non-MAI alibi instructions. Defendant further contends the court erred by failing to allow the jury to view defendant's exhibits by passing the exhibits in the jury box.

Neither of these allegations of error have been preserved for appellate review. Supreme Court Rule 30.06(e) requires that where error is alleged in the "giving, refusal, or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." Defendant has not set out the refused instructions anywhere in his brief. Further, defendant did not object to the court's method of allowing the jury to review defendant's exhibits in his motion for new trial as required by Rule 29.11(d).

In any event we would find no prejudice as the trial court did give defendant's requested alibi Instruction No. 13, which was patterned after MAI–CR2d 3.22 and adequately instructed the jury as to this issue. As to the trial court's method of allowing the jury to view the exhibits, the transcript reveals the jury was in fact allowed to pass the exhibits. Point denied.

The judgment of the trial court is affirmed.

REINHARD, J., concurs.

SMITH, P.J., dissents in separate opinion.

SMITH, P.J., dissenting.

Because the majority has reversed the burden of proof and ignored the requirement of due process in criminal child molestation cases, I must dissent.

The history of this case is of some consequence. On June 29, 1985, the victim, E.L., reported to her mother that defendant had "touched her bottom" the day before. Defendant was a next door neighbor. The police were immediately called and within a day or two interviewed the child and made a report. That report indicated that defendant had placed his hand down the victim's pants and "entered" the vagina. This was stated in the report to have occurred on ten or more occasions. The victim was referred to a counseling service and then examined by a physician. The doctor measured the child's vaginal opening and found it to be 7 millimeters. Based upon a medical treatise she had available, the doctor reported that this measurement was larger than normal for a child of E.L.'s age and was evidence of child molestation. The child was age 8 at the time of the examination. The counseling service then utilized anatomical dolls to teach her the correct terms to identify the sexual organs. The original examining doctor subsequently discovered a more accurate medical study which found that a 7 millimeter vaginal opening in a child of E.L.'s age was well within the range of normal and did not constitute evidence of molestation. No

physical signs of trauma or abuse were found on the physical examination.

Defendant was charged in three counts. The first alleged that defendant had deviate sexual intercourse with E.L. on or about Friday, June 28, 1985, and that E.L. was less than fourteen years old. The second count alleged that between June 1983 and September 1984 the defendant attempted to have sexual intercourse with E.L. The third count alleged that defendant had deviate sexual intercourse with E.L. between June 1983 and September 1984. The place of all three offenses was alleged to be defendant's home.

By motion defendant sought a bill of particulars. As to Count II and III the motion asked for the specific date and place of the offenses. As to Counts I and III the motion sought the "specific, physical nature of the offenses alleged." The motion was denied. Prior to trial the prosecution amended the first count to specify the time of the offense as between noon and 5 p.m. on June 28, 1985.

As to Count I the victim testified that defendant touched her vaginal area on the day prior to her report of the incident to her mother. That date would be June 28, 1985. E.L. did not know the exact time of the day this occurred except that it was in the afternoon. Defendant had, she said, opened his garage door so she and he could enter the garage. The touching consisted of moving his fingers but not entry into the vagina.

Defendant presented evidence from several witnesses concerning June 28. He elicited testimony that on that date his garage door was broken and was closed all day. It required two men utilizing a pry bar and two-by-fours to open it. He provided three independent witnesses who testified to being in his presence during that day. The combination of their testimony accounted for defendant's presence with another person throughout the day until the return of defendant's wife in the afternoon. This evidence also included testimony that E.L. was not in defendant's presence during that period. Upon the return of defendant's wife, at 3:25 p.m., she was in his presence constantly as they prepared for a dental appointment she had. They left the house at 4 p.m., went to the dentist's office and then to a movie, returning to their home considerably after 5 p.m. Again this evidence indicated E.L. was not in the presence of defendant from 3:25 on.

The jury acquitted defendant on Count I. In so doing it obviously credited defendant's evidence, and rejected that of the victim.

As to Count II the victim testified that at some time which E.L. did not remember defendant exposed his penis to her and took her hand and placed it on his penis. He did not take down her pants but she thought he touched her vagina with his penis. On deposition E.L. testified that defendant's penis touched only her hand. On this count the jury found defendant guilty. The court set aside that verdict as unsupported by any evidence of an attempt at penetration.

As to Count III the victim testified that defendant touched her vagina on ten occasions. She thought this happened in second and third grade. Her attendance in third grade was outside the 15 month period charged in the indictment. On deposition she testified that she could not remember if defendant had touched her in second grade, the period covered by the indictment. The victim was unable to place any of these touchings into any time frame less than two years in length. She stated that she had gone to defendant's home to sell girl scout cookies, a time which is generally identifiable. She did not testify that any touching occurred at that time. She provided no seasonal identification, no time based upon whether these incidents occurred during the school year or during vacation, no time based upon holidays or other occurrences important to a seven year old. She did not indicate whether they occurred after school, on weekends, or any other particularization to identify even a general time of occurrence. She did not identify these occurrences with any purpose she had in going to defendant's home. She testified to one "licking" incident again without specification of time, place, or

where on her body the licking occurred. This incident was not included in the police report. She furnished no testimony describing the physical surroundings in which these incidents occurred other than the defendant's basement or garage. She stated that she would come to defendant's home on occasions to borrow a riding buggy but did not correlate the alleged incidents to those borrowings. The victim stated that the touchings were only that and that no entry occurred. The initial police report indicated that defendant's fingers "entered" the victim. The police officer stated that "entered" meant touched otherwise he would have said "penetrated." As the majority points out, and discounts, the witness testified mostly from leading questions and with frequent "I think" or "I guess" answers. I accept this as normal for a child of this age under the circumstances, but given the absence of consistency between the trial testimony, the deposition, and the police report, her complete ignorance of when the incidents occurred, and the absence of any corroboration at all, I find such testimony considerably less compelling than does the majority. On cross-examination the victim demonstrated a good memory for all the other activities in her life and when they occur.

In defense the defendant attempted through his testimony and that of his wife to reconstruct his activities throughout the fifteen month period. Obviously, there were gaps in this attempt, as it is virtually impossible for anyone to establish that for a fifteen month period they were never alone in their home under circumstances where they could not have contact with a young child from next door. The defendant also adduced medical evidence that an entry with a finger into a vagina of the size of the victim's would result in stretching or tearing and would be medically observable. Defendant denied any of the incidents or any molestation. Defendant's wife testified that she often helped E.L. get the buggy from the basement.

The doctor who initially examined the victim testified that her final diagnosis was consistent with the child's story. That diagnosis was that there was no physical evidence of trauma or molestation. Its consistency is that at trial the victim testified that defendant was gentle and did not hurt her. The majority points to this as demonstrating the consistency of the victim's story. I regard that as a strange conclusion. The doctor's examination revealed no evidence of molestation. Why this is more consistent with E.L.'s testimony of molestation than with defendant's testimony that he didn't touch her escapes me. In truth the doctor made a serious error in her initial conclusion, and at trial, while admitting her error, persistently refused to admit that in fact her report neither supported nor refuted the victim's charges.

I have felt it necessary to set forth in such detail the facts adduced at trial because of my belief that the position of the majority has reversed the constitutionally mandated burden of proof and denied defendant due process of law. Throughout the opinion the majority refers to the "impossibility" of the State establishing the time of the occurrences. I had always believed that if it is impossible for the State to provide necessary evidence then the defendant must be discharged.

I have some quarrel with the majority conclusion regarding the indictment. Appellate courts in Missouri have upheld charges involving lengthy periods of time comparable to this one. It is pertinent to point out, however, that an indictment or information serves as more than a notice to defendant. It must, in addition to setting forth the elements of the offense, clearly apprise the defendant of the facts constituting the offense in order to enable him to meet the charge and it also must be sufficiently specific to serve as a protection against double jeopardy. *State v. Stigall*, 700 S.W.2d 851 (Mo.App.1985) [3]. Here the third count of the indictment is framed in the same language as the first two counts each of which is directed at a single act. Presumably Count III also covers a single act of deviate sexual conduct which is not otherwise identified.

The testimony of the victim indicates a series of acts occurring both during the

charged period and during an uncharged period. The evidence and verdict do not identify any particular act as the one upon which the conviction is based. The verdict-directing instruction tracked the indictment and does not identify any specific act. It is at least questionable to me that defendant is protected from double jeopardy for all acts during the charged period, and clearly is not protected for any acts during the uncharged period when possibly all the acts testified to by the victim may have occurred. *State v. Bowles,* 360 S.W.2d 706 (Mo.1962) [3]. Under the circumstances of this case I do not believe the indictment performs two of the three functions required of it.

The thrust of the majority opinion is that defendant was not in fact relying on an alibi and therefore time is unimportant. This allows the majority to conclude that the verdict-directing instruction was acceptable. In a pristine sense the defense here is not totally alibi as defendant did not attempt to prove he was never at his home during the fifteen month period. What he did attempt to prove was that he was never at home by himself in the presence of the victim. The prosecution bears the burden of establishing that defendant was present at the time and place where he is accused of participating in the crime. *State v. Clark,* 509 S.W.2d 740 (Mo.App.1974) [6–8]. An alibi is a conversing of this element of the State's case. It presents to the fact-finder an evidentiary basis for finding non-participation in the crime by the defendant. Where an alibi is interposed as a defense, time may become of "decisive importance" even though it is not of the "essence" of the offense. *State v. Armstead,* 283 S.W.2d 577 (Mo.1955) [5]; *State v. Bowles, supra,* [7]; *State v. Clark, supra; State v. Siems,* 535 S.W.2d 261 (Mo.App.1976) [7–10]. In such a situation our courts have recognized a rule of fundamental fairness that the time span within which the crime is alleged to have occurred must not be so long as to place an impossible burden on the defendant to establish his whereabouts over an extended period of time. *State v. Clark, supra.* The "fundamental fairness" rule is nothing more than a recognition that due process includes the right of one charged with a crime to defend himself. This requires that the state establish the occurrence of the crime with sufficient specificity to allow a defense.

The defense sought to be interposed by defendant here is very similar to an alibi. In part he sought to prove his absence from the home for substantial periods of time. Additionally he sought to establish that he was not alone in his home with E.L. during the period charged. He in short was attempting to converse an essential element of the State's case, his presence with E.L. It will not do, in my opinion, to ignore the fundamental fairness rule of the cases cited by stating, as the majority does, that his was not an alibi defense therefore he is not entitled to refute his presence with E.L. Defendant tried to obtain a bill of particulars giving the dates of the offense. This he was refused. The time period was so long and so otherwise unspecified that no one, save possibly a bedridden invalid with a full-time nurse, could have successfully presented evidence to refute his presence with E.L. Defendant was reduced to trying to defend himself by testifying that he did not do what E.L. said he did.

The majority distinguishes *Armstead, Bowles,* and *Siems, supra,* on the basis that in each a specific date was alleged in the indictment. This is true, but, to me, unimportant. Such a distinction places the availability of a defense solely in the hands of the prosecutor. If he elects to charge specifically then defendant can establish his non-presence with the victim and fundamental fairness precludes a subsequent non-specificity which destroys the defense. But if the prosecutor chooses to charge an unreasonably long time period and defendant is denied particulars he loses all opportunity to prove his non-presence. The distinction, so artfully crafted by the majority, destroys the fundamental fairness rule.[1] I

---

1. Distinguishing of other cases is a proper and legitimate appellate procedure. Because no two cases are ever exactly alike, any case can be distinguished. But all such distinctions are not

do not believe a rule of fundamental fairness can or should be so cavalierly and arbitrarily by-passed. The verdict-directing instruction was in clear violation of the rule laid down in *Armstead, Bowles, Clark,* and *Siems,* and was prejudicially erroneous.

It must be admitted at this point that the instruction given was the only one supported by the evidence. A charge so generalized as to take from the defendant his only viable defense, followed by evidence of equivalent ambiguity, is not in my opinion sufficient to take a case to the jury. It is just not due process.

The majority finds the evidence sufficient to make the state's case and finds defendant adequately protected by the requirement that the trier of fact must find defendant guilty beyond a reasonable doubt. It opines that the jury can assess the witness' credibility by taking into account the witness' inability to specify the exact day and time of the crime. We are not dealing with a problem of an "exact" or "precise" day or time. I would not require that in cases involving a crime against a small child and neither do the cases. We are dealing here with an indefiniteness of at least two years. E.L. testified the defendant's actions occurred sometime while she was in second or third grade. The charge was from June 1983 to September 1984 and E.L. did not complete third grade until June 1985. I have found no case in which a time period comparable to this has been allowed against a person who was not a resident or frequent visitor in the victim's home. I similarly have found no case which has upheld a conviction in which the alleged criminal acts could not be at least generally identified within a shorter time frame than this, or where some or all of the claimed unspecified acts occurred outside the charged period.[2]

It is an appellate judicial function to determine whether evidence is substantial as a matter of law and warrants inferences sufficient for submission of the case to the jury. *State v. Bohannon,* 526 S.W.2d 861 (Mo.App.1975) [1]. The usual rule is that the uncorroborated testimony of a victim of a rape or sodomy is sufficient to support a conviction. *State v. Harris,* 620 S.W.2d 349 (Mo. banc 1981) [5]. However, when the evidence of the victim is of a contradictory nature, or when applied to the admitted facts of the case her testimony is not convincing but leaves the mind of the court clouded with doubt, she must be corroborated or the judgment cannot be sustained. *State v. Bohannon, supra.* There was no corroboration here at all. The credibility of the witness was examined by the jury on Count I and found wanting. E.L. testified that she believed defendant touched her ten times in the second and third grade. Third grade was outside the charged time frame. Neither the "licking"

acceptable. Where the fact utilized to distinguish does not logically impact on the principle of law involved, the distinction becomes one without a difference. The fundamental fairness rule does not depend for its validity on when in the process the prosecutor elects to remove the opportunity to defend.

**2.** Having found no Missouri cases to support its conclusion the majority relies on five cases from other jurisdictions. In four of those cases (*Jackson v. United States, Bonds v. State, People v. Naugle,* and *State v. Clark*) the charges involved either residents in the defendant's home or it was admitted that defendant was present alone with the victim. The fifth case does not contain sufficient information to know what the relationship of the defendant and victim was. In the first four cases the prospect of an alibi was regarded as specious. Defendant here was not a resident of the victim's household and obviously would not have the same access as in the cases relied upon by the majority. As evidenced by Count I the ability to establish an alibi, either as to a particular time period or as to a time of day is not at all impossible. All of the cases involve much more specific charges and much shorter time periods than are present here. *People v. Naugle* included as a factor to be considered "the prosecutor's efforts to pinpoint a date." There is no evidence in the present case that any such effort as delineated in that case was made. None of the five cases appear to involve conduct which may or may not have occurred within the charged periods. I do not find these cases persuasive on the facts before us.

nor the penis incident were definitely identified as within the charged time period although they well could have been the incidents upon which one or more jurors based their verdict as both constitute deviate sexual conduct. In E.L.'s deposition she did not remember whether any of the incidents occurred in second grade. This can hardly be passed off as a "minor point on a collateral nature that is not essential to the case." If no incidents occurred until third grade then defendant was not guilty of the crime with which he was so indefinitely charged. While there was some rehabilitation of E.L. the fact remains she testified differently at trial than in her deposition on an essential matter. The original police report reflected that E.L. told the police that defendant's fingers "entered" her vagina. At trial she testified they did not. The report was consistent with the initial report of the examining physician; the trial testimony was consistent with the second report. Defendant presented medical evidence that an entry into the vagina of the fingers of the defendant would cause an injury detectable on subsequent medical examination. No such injury was detected. This is one mind that is seriously clouded with doubt.

What has clearly happened in this case is that the jury and this court have placed upon the defendant the obligation that he prove his innocence. Confronted with a specific allegation, he did so to the satisfaction of the jury. Confronted with a nonspecific charge, he could not possibly do so. I am fully cognizant of the difficulties inherent in prosecutions for child molestation and do not expect that young children will be able to testify with the precision of adults. Some considerable leeway must necessarily be allowed in determining what constitutes substantial evidence in such cases. But we cannot allow a frenzy to prosecute and convict for this reprehensible crime to destroy our constitutionally mandated and eminently sound concepts of due process, presumption of innocence, burden of proof, and guilt beyond a reasonable doubt. That happened in this case and I dissent from the result. The judgment should be reversed and the defendant dis-

charged or at a minimum remanded for new trial utilizing an instruction sufficiently specific to provide defendant an opportunity to defend.