**STATE of Missouri, Respondent,**

v.

**Craig C. STEVENS, Appellant.**

**No. SD 31304.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 11, 2012.

Emmett D. Queener, Columbia, for appellant.

Chris Koster, Attorney General and John M. Reeves, Assistant Attorney General, Jefferson City, MO, for respondent.

WILLIAM W. FRANCIS, JR.,
Presiding Judge.

Craig C. Stevens ("Stevens") appeals his conviction of the class C felony of abuse of a child in violation of section 568.060.[1] Stevens contends insufficient evidence supported his conviction because the evidence failed to establish he placed a sock in the child's ("C.W.") mouth and covered it with tape. Finding no merit to Stevens' claim, we affirm.

### Factual and Procedural History

On February 9, 2011, Stevens was tried by a jury. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial.

C.W. was born on June 29, 2003. On December 31, 2008, C.W. was living with his mother—Alisha Knopfel ("Knopfel"), his brother—T.W., and Knopfel's boyfriend—Travis Fisher ("Fisher"). That evening, Stevens—C.W.'s grandfather[2] and Beatrice Cordova ("Cordova")—Fisher's mother, were also over at the Knopfel house to eat, play cards, and celebrate the new year. C.W. had a history of behavioral problems, but C.W. was not misbehaving that night. C.W. and his brother were sent to bed between 7:30 and 8:00 p.m. They went to their bedroom and Stevens followed to "tuck them into bed."

Cordova said that the adults began drinking straight shots of alcohol about 9:00 or 9:30 p.m. Before 11:45 p.m., all the adults had gotten sick and vomited from drinking shots. Cordova went to sleep between 11:30 and 11:45 p.m. The next time Cordova saw C.W. was between 8:00 and 8:30 the next morning. C.W. was in his bedroom, sitting in a chair tied up. Cordova believed C.W. was tied up with "a shirt that was wrapped around and tied up." Stevens was sleeping within an arm's reach of C.W. Cordova asked Stevens "if [C.W.] was tied up." Stevens "leaned up and nodded his head and said yes." Cordova also told Knopfel what she saw, but Knopfel did nothing. Cordova did not see anyone untie C.W. before she left around 8:30 a.m.

Later that month, Cordova called the police. On January 13, 2009, police officer Lydle Davis ("Officer Davis") escorted a Division of Family Service ("DFS") worker to Knopfel's residence. Officer Davis seized what appeared to be a "straitjacket." Knopfel identified the jacket as an item made from her Halloween costume when she dressed as a mental patient.

The State charged Stevens with abuse of a child, alleging he knowingly inflicted cruel and inhuman punishment upon C.W. by "putting a straight jacket [sic] on [him], inserting a sock in his mouth, duct taping his mouth and tying him to a chair."

C.W. testified that Stevens put the straitjacket on him and put him in a recliner in his bedroom. C.W. testified that he could not get out of the recliner because Stevens had strapped his feet together and strapped him to the chair. C.W. also said he could not talk "[b]ecause [Stevens] had a sock in my mouth." C.W. said that "[Fisher] I think[ ]" taped the sock. C.W. said that Fisher was there when Stevens "was doing this to me." C.W. also testified that Stevens had a history of beating C.W. with a belt and with his hand.

On January 13, 2009, Dr. Otha Rains, Jr. ("Dr. Rains"), examined C.W. after he was brought to the emergency room by DFS for examination and evaluation. Dr. Rains testified that on C.W.'s "facial areas he had big abrasions on the lateral part of his

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. Stevens is believed to be Knopfel's father.

cheeks." Dr. Rains noticed the "large abrasions" on either cheek "were very delineated[ ] [and] [h]ad good margins to them. They weren't irregular." Dr. Rains concluded tape would have caused the abrasions on C.W.'s cheeks. Dr. Rains testified the abrasions had square, sharp edges and were consistent with something adhesive. Dr. Rains also opined that based on his training and experience, if a patient had an object like a sock put in his mouth and taped across his mouth, that this was a life-threatening situation if that person began choking or needed to extricate something out of his mouth. Dr. Rains explained there was also the possibility that the person would not be able to breathe under those circumstances. Dr. Rains testified that there was a lot of bruising over numerous areas on C.W. He explained some were old and some were new, which "was representative of continuous trauma to the body over some period of time." Dr. Rains also testified C.W. was "pretty withdrawn."

"Instruction No. 5" was submitted to the jurors as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about and between the dates of 31 December 2008 and 1 January 2009, in the County of Crawford, State of Missouri, the defendant placed [C.W.] in a straitjacket, tied him to a chair and gagged him by placing a sock in his mouth and securing it with duct tape, and

Second, that in so doing, defendant inflicted cruel and inhuman punishment upon [C.W.], and

Third, that [C.W.] was then less than seventeen years old, and

Fourth, that defendant knew his conduct was inflicting cruel and inhuman punishment upon a child less than seventeen years old,

then you will find the defendant guilty of abuse of a child. However, unless you find and believe the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The jurors returned a verdict finding Stevens guilty of abuse of a child as submitted in Instruction No. 5. The trial court sentenced Stevens as a prior and persistent offender to fifteen years' imprisonment. This appeal followed.

Stevens contends the trial court erred in imposing judgment and sentence against Stevens for abuse of a child because the evidence was insufficient to convict Stevens of the offense in that the evidence failed to establish that Stevens placed a sock in C.W.'s mouth and covered it with tape. The issue pertinent to our resolution of this appeal is whether the evidence was sufficient to support a reasonable inference that Stevens placed a sock in C.W.'s mouth and secured it with tape.

## Standard of Review

■ "When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Belton,* 153 S.W.3d 307, 309 (Mo. banc 2005). This Court must consider the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregard all inferences to the contrary. *State v. Biggs,* 333 S.W.3d 472, 480 (Mo. banc 2011). "Even if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered." *State v. Latall,* 271 S.W.3d 561, 568 (Mo. banc 2008). In reviewing the evidence, however, this Court cannot supply missing evidence or give the State the

benefit of unreasonable, speculative or forced inferences. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). The reliability, credibility, and weight of witness testimony are for the fact-finder to determine, and it is within the fact-finder's province to believe all, some, or none of the witness' testimony in arriving at its decision. *State v. Cannafax*, 344 S.W.3d 279, 284 (Mo.App. S.D.2011).

## Analysis

Section 568.060.1(1) provides that a person commits the crime of abuse of a child if such person "[k]nowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old[.]" "'[P]unishment,' as used in § 568.060, includes 'severe, rough, or disastrous treatment.'" *State v. Silvey*, 980 S.W.2d 103, 108 (Mo. App. S.D.1998).

■ Here, the State chose to submit the case against Stevens based upon Stevens' guilt as a principal; consequently, the State accepted the burden of proving that Stevens "placed [C.W.] in a straitjacket, tied him to a chair and gagged him by placing a sock in his mouth and securing it with duct tape[.]"[3] *See State v. Friend*, 936 S.W.2d 824, 827–28 (Mo.App. S.D. 1996); *see also State v. Smith*, 355 S.W.3d 560, 563 (Mo.App. E.D.2011) ("When the charge specifies the act constituting the crime, the State must prove that act."). Stevens' only claim of error is in regards to the act of placing a sock in C.W.'s mouth and taping it. Specifically, Stevens argues the "evidence presented at trial was that the sock was placed in [C.W.]'s

mouth and the tape was placed over it by [Fisher], not Stevens." We disagree.

C.W. unequivocally testified that Stevens put the straitjacket on him, strapped his feet together, and strapped him in a recliner in his bedroom. Directly following this testimony identifying *Stevens* as doing these things to him (and before any mention of Fisher or anyone else), C.W. was asked why he could not talk; C.W. said, "Because *he* had a sock in my mouth." (Emphasis added). Logically, in this context, the "he" is referring to Stevens. While C.W. did subsequently respond that "[Fisher] I think" taped the sock, the jury was permitted to believe all, some, or none of C.W.'s testimony in arriving at its decision. *Cannafax*, 344 S.W.3d at 284. The phrase "I think" included by C.W. could reasonably have raised doubt as to that part of C.W.'s testimony identifying Fisher as the one taping his mouth. Moreover, C.W. went on to respond in the affirmative that Fisher was "there when [Stevens] was doing this to you." This again supports an inference that Stevens was the one who placed C.W. in a straitjacket, tied him to a chair, and gagged him by placing a sock in his mouth and securing it with duct tape. Finally, Stevens was sleeping within an arm's reach of C.W., and Cordova asked Stevens in the morning "if [C.W.] was tied up"; Stevens "leaned up and nodded his head and said yes."

This Court is required to give deference to the jury's credibility decisions. *State v. Herrington*, 315 S.W.3d 424, 425 (Mo.App. S.D.2010). "Unlike the reviewing tribunal, which only sees the cold record and does not have the opportunity to judge the witnesses who gave testimony, the jurors

---

**3.** The State's brief claims that Stevens' appeal is defeated because a defendant can be charged as a principal in the commission of a crime and convicted under a theory of accomplice liability. While this is a correct proposition of law and Missouri law does recognize

that all persons who act together with a common intent and purpose in the commission of the crime are equally guilty, in this case, Stevens was not convicted under a theory of accomplice liability, rather, the jury's conviction rested on Stevens' actions as a principal.

were able to view first-hand all the witness testimony placing them in a superior position to determine witness credibility and the weight and value of their testimony." *State v. Hopper,* 326 S.W.3d 143, 151 (Mo. App. S.D.2010).

Viewed in the light most favorable to the verdict, we find this evidence sufficiently supported a reasonable inference that Stevens placed a sock in C.W.'s mouth and secured it with tape. Point denied. The judgment is affirmed.

BARNEY and BATES, JJ., concur.