

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD33002 |
| | ) | |
| JANE E. WARE, | ) | **Filed: November 12, 2014** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable John D. Wiggins, Senior Judge

<u>**AFFIRMED**</u>

In a court-tried trial, Jane E. Ware ("Appellant") was convicted of the class C felony of tampering with a witness, a violation of section 575.270,[1] for an event that occurred on September 8, 2011. A person commits the crime of tampering with a witness when he uses force, threats, or deception for the purpose of inducing a witness or a prospective witness to (1) disobey a subpoena or other legal process, or (2) absent himself or avoid subpoena or other legal process, or (3) withhold evidence, information or documents, or (4) testify falsely. Section 575.270.1(2). Appellant challenges the sufficiency of the evidence concerning the use of force or threats to "withhold evidence

---

[1] All references to statutes are to RSMo Cum. Supp. 2005, unless otherwise specified.

or information" and "to avoid legal process in the felony prosecution" of her husband, Christopher Ware. We reject Appellant's claims of error and affirm the judgment.

Appellant is married to Christopher Ware; Christopher Ware is the father of ten-year-old C.D.C. and was charged with the criminal nonsupport of the child. Prior to the September date, Mr. Ware had very little interaction with C.D.C., and had only one overnight visit. After the criminal charges for nonsupport, Appellant and Mr. Ware continually called the mother of C.D.C. ("Mother") in an attempt to get Mother to drop the criminal nonsupport charges against him. Mr. Ware threatened Mother by saying that she did not know who she was "messing with"; he told Mother that if she did not sign child support papers prepared by his attorneys, he would fight her for full custody of C.D.C. so that he would not have to pay child support. He also told Mother that "the State's on his butt and he needed to get it taken care of." Appellant made similar statements to Mother during this time frame, including "[Mr. Ware] said you might as well sign child support papers because you're not going to receive a dime."

On September 8, 2011, Mr. Ware and Appellant arrived at the school where C.D.C. attended, stating that they wanted to pick up the child. Neither Appellant, nor Mr. Ware, had sought Mother's permission to pick up the child from school; further, they did not have any prior permission to ever pick up the child from school in the middle of the day. When the school questioned his right to pick up the child, Mr. Ware produced a copy of the birth certificate which listed him as the father of C.D.C. and stated that they were picking C.D.C. up to meet Mother at the courthouse.[2] The school official was alarmed and called the resource officer for the school but was unable to reach him; she

---

[2] He also explained that he did not see C.D.C. often and that she might be surprised to see him. Indeed, she was surprised, stepped back a little, and ultimately told Mother that she was afraid she was never going to see Mother again.

2

was told by the police department that if Mr. Ware had proper identification and the original birth certificate, that the school must release the child.

Mother, in the meantime, had received several calls from the Wares but had not answered them; when she did answer Appellant's calls, she was told that "we have C.D.C." Mother called police to report that her daughter had been picked up from school; because the police had been alerted by the earlier calls from the school, Mother was advised to go to the police station. Mother also called her mother, the grandmother of the child, to report the situation. The grandmother called Mr. Ware and was told that he had C.D.C. and would not bring her back until Mother went to "sign the papers." When the grandmother asked him what papers he was talking about, Mr. Ware answered, "saying that she doesn't want me to pay child support."

Appellant called Mother while Mother was at the police station. The officer observed that Mother was in shock and afraid for her daughter, appearing to be hysterical. While on the phone, Mother kept saying, "I'll do whatever you want, I'll sign whatever you want, I just—I just want my baby." The officer instructed Mother to go ahead to the Division of Family Services' office and he would meet her there with several other police officers. Mother told her caseworker that her child had been "taken" and she would not get the child back unless she signed some papers giving up her rights to child support. Appellant told Mother, who was crying, to sign the papers and then she could have her child back.

Mr. Ware and Appellant took the child to McDonald's and to Mr. Ware's attorney's office. After the visit with Mr. Ware's attorney, Mr. Ware received a call from his attorney who said something to the effect of, "What have you done? Get that child

back to school." The Wares complied and returned the child to the school. The papers were, in fact, a parenting plan that Mr. Ware's attorney had prepared; they set out the custodial rights and specifically stated that Mr. Ware would not pay child support in the future. The plan did not mention the pending criminal nonsupport charges against Mr. Ware nor did Mother know whether signing the papers would dismiss the criminal charges against Mr. Ware. After the police officer arrived at the Division of Family Services' office, the car that had been described to the officer as the car belonging to Mr. Ware left. The police pursued the vehicle. When the car was pulled over, Appellant was driving and Mr. Ware was not in the car. Appellant claimed that Mr. Ware was at his attorney's office; however, he was not there when the officer arrived.[3]

Appellant claims in her first point that the evidence was insufficient to support the conviction because the State charged her with tampering with a witness with the purpose of inducing Mother *to withhold evidence or information in the felony prosecution of Christopher W. Ware;* Appellant claims there was no evidence to support the italicized element of the allegation. In support of that claim, Appellant claims there is nothing in the record supporting an inference that Appellant acted with the purpose of inducing Mother to refrain from testifying or to withhold information in the criminal prosecution of Mr. Ware on the pending nonsupport case. We disagree.

---

[3] Appellant's defense was that the custody papers were Mother's idea and discussions had been going on between Mr. Ware and Mother for two years. Appellant said it was Appellant's idea to get the paperwork signed and filed that day. She claimed that the only reason they picked up C.D.C. from school was because they needed to get her address and social security number to fill in the custody paperwork but she did not think she told Mother the reason they needed her address. She claimed they took C.D.C. to the attorney's office because she thought it was important to hear what C.D.C. wanted in the paperwork. She claimed to have advised Mother that C.D.C. was back in school when she handed Mother the custody agreement and said, "here's the paperwork you asked for. Now get it signed." The court stated after the trial, "I do not find the testimony of the defendant all that credible." "[I]n reviewing a claim challenging the sufficiency of evidence, we must determine whether the evidence is sufficient to support a conviction by viewing the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding all contradictory evidence and inferences." *State v. Davis,* 903 S.W.2d 930, 934 (Mo.App. W.D. 1995). Our summary of the facts is presented in accordance with that standard.

4

Our review of a challenge to the sufficiency of the evidence is limited to determining whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. *State v. Stevens*, 366 S.W.3d 635, 637 (Mo.App. S.D. 2012). We consider the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregard all inferences to the contrary. *Id.* We note that the reliability, credibility, and weight of witness testimony are for the fact-finder to determine, and it is within the fact-finder's authority to believe all, some or none of a witness's testimony in making its decision. *Id.* at 638.

Appellant does not appear to be challenging that the taking of the child from school without Mother's permission or knowledge was meant as a threat but, rather, Appellant points to the record of the events on the particular day to support her claim that the purpose of the action was not to have Mother withhold evidence or information in the felony prosecution of Mr. Ware. She notes that the papers handed to Mother on that day were only concerned with future child support and visitation and not the criminal prosecution. Appellant ignores the history leading up to the events of that day.

Mother had received State benefits for the child and, as a result, then had to identify Mr. Ware on the birth certificate as the father of C.D.C. and assign her rights to benefits to the State. It was the Division of Family Services that requested Mother file for child support. As admitted by Appellant, Mr. Ware, in the months preceding this event, told Mother that he wanted her to sign child support papers saying that he did not have to pay her child support so that the State would stop coming after him and he would not have to go to jail. Mother was a likely witness in the nonsupport case who could testify as to back support that had not been provided to her by Mr. Ware.

5

Appellant relies on the fact that the papers were "only" a parenting plan and that the court and attorneys present at the trial believed that the parenting plan would not have been a defense to the criminal nonsupport charges. The reliance is misplaced. The State was required to prove that Appellant had the purpose of inducing a prospective witness to withhold evidence and used force, threats, or deception to do so. The court specifically found that Appellant and Mr. Ware believed that these papers would create a defense to the criminal charges when they took C.D.C. from school. It is a reasonable inference that the taking of the child was meant to threaten and intimidate Mother so that she would not be a witness in the criminal prosecution for nonsupport. That inference is reasonable in light of the facts that there was no rush for a future custody or visitation schedule as Mr. Ware had very little contact with the child in the past. Appellant and Mr. Ware took a ten-year-old child from school saying they needed an address and social security number for the child. They did not ask the school for either the address or social security number; instead, they drove by the child's home with the child.

Additionally, there was testimony at the trial that Mr. Ware and Appellant relayed in plain language that the child was being taken to be held until Mother signed the papers presented to her by Appellant. Mother made it clear that she would sign whatever was put in front of her, that she simply wanted her child returned. At the time that the threats were made, it is a reasonable inference that Appellant acted with the purpose to impact the criminal charges against Mr. Ware by inducing Mother to withhold evidence or information about the support issue. Appellant's argument simply urges us to accept a contrary inference, which by our standard of review we are required to disregard. Point I is denied.

6

In her second point, Appellant contends that there was insufficient evidence to convict her of tampering with a witness in that the State failed to establish proof beyond a reasonable doubt that any force or threats were to cause Mother to *avoid subpoena or other legal process, or to withhold evidence, information* or documents, or to testify falsely. The basis of Appellant's argument is that at the close of the evidence, the State proferred a "jury instruction" for the benefit of the court that the State thought correctly set out the elements of the offense charged. That instruction stated that the purpose of Appellant's actions was to induce Mother to *avoid legal process* in connection with the child support action. Appellant then argues that "legal process" has a specific meaning, the service of process of a writ, summons, subpoena, any warrant besides an arrest warrant, or other process or court order. Appellant then reasons that there was no evidence concerning the process of a writ, summons, subpoena, or warrant. Appellant's argument is misguided.

This was a court-tried case. The court is presumed to know the law and to apply it in making its decision. ***State v. Finley***, 403 S.W.3d 625, 629 (Mo.App. S.D. 2012). The State provided what it deemed to be an aid to the court in making its decision. Whether that jury instruction was helpful to the court does not concern us. The court concluded that Appellant's purpose in her actions was to intimidate Mother into helping Mr. Ware avoid criminal liability in the case that was pending against him. As discussed in Point I, there was sufficient evidence to support that finding. Point II has no merit.

The judgment is affirmed.

Nancy Steffen Rahmeyer, J.  - Opinion Author

Gary W. Lynch, J. - Concurs

Don E. Burrell, J. - Concurs