

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
      )
    Plaintiff-Respondent, )
      )
vs. )    No. SD38559
      )
DAVID PATRICK YOUNT, )    **Filed:  February 25, 2025**
      )
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Jerry A. Harmison, Jr., Judge

## <u>AFFIRMED</u>

David Patrick Yount ("Yount") appeals the judgment of the Circuit Court of Greene County, Missouri ("trial court"), convicting him of statutory sodomy in the first degree and child molestation in the first degree following a bench trial. *See* sections 566.062 and 566.067, respectively.[1]  The trial court sentenced him to 21 years' imprisonment for statutory sodomy and 10 years' imprisonment for child molestation, each sentence to run concurrently with the other.  Yount raises three points on appeal. Each of Yount's points relied on fail to comply with the mandatory provisions of Rule

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2000, and all rule references are to Missouri Court Rules (2024).

1

84.04 and therefore preserve nothing for appeal. However, Point I raises sufficiency of the evidence claims which this Court is required to review regardless of its deficiencies. As to Points II and III, to the extent they attempt to claim error "respecting the sufficiency of the information," Rule 30.20 allows us to address those issues despite the briefing deficiencies.

### *Briefing Deficiencies*

Yount's brief does not comply with the requirements of Rule 84.04. The brief contains a deficient statement of facts, non-compliant and multifarious points relied on, and nonconforming argument. "Rule 84.04 sets forth the requirements for briefs filed with appellate courts, and compliance with these requirements is mandatory." ***Bi-National Gateway Terminal*, *LLC v. City of St. Louis***, 697 S.W.3d 593, 597 (Mo. App. E.D. 2024) (quoting ***Placke v. City of Sunset Hills Missouri***, 670 S.W.3d 228, 231 (Mo. App. E.D. 2023)). "[T]he function of the appellant's brief is to explain to the court why, despite the evidence seemingly favorable to the respondent, the law requires that appellant must prevail." ***In re Marriage of Blanchard***, 613 S.W.3d 879, 885 (Mo. App. S.D. 2020) (quoting ***Hoer v. Small***, 1 S.W.3d 569, 571 (Mo. App. E.D. 1999)).

> When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

***Lexow v. Boeing Co.***, 643 S.W.3d 501, 505 (Mo. banc 2022) (quoting ***Thummel v. King***, 570 S.W.2d 679, 686 (Mo. banc 1978)).

*Yount's Statement of Facts*

Rule 84.04(c) sets forth what is required for a compliant and acceptable statement of facts:

> The statement of facts shall be a *fair* and *concise* statement of the facts relevant to the questions presented for determination without argument. All statements of facts shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits. If the citation is to the system-generated legal file, it shall include the system-generated appeal document number and page number (e.g., D6 p. 7). If the portion cited is contained in the appendix, a page reference to the appendix shall also be included (e.g., D6 p. 7; App 9).

Rule 84.04(c) (emphasis added). "The primary purpose of the statement of facts is to afford an immediate, accurate, complete[,] and unbiased understanding of the facts of the case. Failure to substantially comply with Rule 84.04(c) preserves nothing for review." *Hicks v. Northland-Smithville*, 655 S.W.3d 641, 648 (Mo. App. W.D. 2022) (internal quotations and citations omitted).

Yount's statement of facts is neither fair nor concise. In his impermissibly lengthy 57-page statement of facts, Yount summarized the entire trial, beginning with the appearances on behalf of the parties and all pretrial happenings. Essentially, Yount's statement of facts appears to summarize the trial transcript, recounting a play-by-play of the entire trial, including the process, procedures, and testimony of all witnesses. The statement of facts, by no means, includes only the facts relevant to the questions presented on appeal as required by the rule. Further, Rule 84.04(c) requires that all statements of facts "have specific page references to the relevant portion of the record on appeal[.]" Rule 84.04(c). Yount, at best, provides sporadic citations to the record on appeal as he recounts the trial. "[F]ailure to 'substantially comply with Rule 84.04(c) preserves nothing for appellate review.'" *Exec. Bd. of Mo. Baptist Convention v.*

3

*Windermere Baptist Conf. Ctr., Inc.*, 430 S.W.3d 274, 285 (Mo. App. S.D. 2014) (quoting *Haynes Family Corp. v. Dean Properties, Inc.*, 923 S.W.2d 465, 467 (Mo. App. S.D. 1996)). Appellant's violations of Rule 84.04(c) alone warrant dismissal of his appeal. *Shelter Mut. Ins. Co. v. Mitchell*, 413 S.W.3d 348, 352 (Mo. App. S.D. 2013).

### *Yount's Points Relied On*

Points relied on are central to the formation of a brief as they "give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Lexow*, 643 S.W.3d at 505 (quoting *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997)).

Rule 84.04(d)(1) sets forth clear requirements for a point relied on:

(1) Where the appellate court reviews the decision of a trial court, each point shall:
(A) Identify the trial court ruling or action that the appellant challenges;
(B) State concisely the legal reasons for the appellant's claim of reversible error; and
(C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Rule 84.04(d)(1); *In re Marvin*, 682 S.W.3d 788, 796 (Mo. App. W.D. 2023). "Because a template is specifically provided in Rule 84.04(d), there is no excuse for failing to submit an adequate point relied on." *State v. Haneline*, 680 S.W.3d 550, 562 (Mo. App. S.D. 2023).

Yount's three points on appeal are as follows:

I. THE TRIAL COURT ERRED IN FINDING DEFENDANT DAVID PATRICK YOUNT GUILTY OF THE FELONY OF STATUTORY SODOMY IN THE FIRST DEGREE AND THE CLASS B FELONY OF

4

CHILD MOLESTATION IN THE FIRST DEGREE IN THAT THE EVIDENCE DID NOT SHOW BEYOND A REASONABLE DOUBT THAT THE DEFENDANT WAS GUILTY AND DID NOT PROVE THAT THE EVIDENCE WAS INCONSISTENT WITH INNOCENCE.

II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE STATE'S EVIDENCE, AND FINDING DEFENDANT DAVID PATRICK YOUNT GUILTY OF THE FELONY OF STATUTORY SODOMY IN THE FIRST DEGREE AND THE CLASS B FELONY OF CHILD MOLESTATION IN THE FIRST DEGREE IN THAT THE AMENDED FELONY INFORMATION DID NOT PROVIDE A SPECIFIC OFFENSE DATE AND ONLY PROVIDED A DATE RANGE, A RANGE THAT WAS CHANGED FROM THE ORIGINAL INFORMATION, A RANGE THAT WAS NOT SUPPORTED BY THE EVIDENCE, AND THUS DID NOT SUPPORT A CONVICTION.

III. THE TRIAL COURT ERRED IN FINDING DEFENDANT DAVID PATRICK YOUNT GUILTY OF THE FELONY OF STATUTORY SODOMY IN THE FIRST DEGREE AND THE CLASS [B] FELONY OF CHILD MOLESTATION IN THE FIRST DEGREE IN THAT DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED BY THE AMENDED FELONY INFORMATION ON FILE IN THAT HE WAS DENIED KNOWNG [sic] THE BASIS FOR HIS CONVICTIONS.

None of these points comply with the requirements of Rule 84.04(d)(1). Each of Yount's points are multifarious. In each point, he asserts the trial court erred in "finding [Yount] guilty of the felony of statutory sodomy in the first degree and the class B felony of child molestation in the first degree[,]" challenging two separate convictions. "Consolidating 'multiple, independent claims' into a point is not permitted." *Lexow*, 643 S.W.3d at 506 (quoting *Kirk v. State*, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017)). With regard to Point I, "[i]n challenging sufficiency of the evidence to support . . . convictions for [multiple charges] . . . in a single point, [Yount's] . . . point is multifarious." *State v. Dodd*, 637 S.W.3d 659, 666 (Mo. App. W.D. 2021). Additionally, all three points relied on fail to follow the "erred in/because/in that" construction. *See Blanchard*, 613 S.W.3d at 885. By not using the format required by the rule, each point fails to challenge a

5

particular legal ruling of the trial court, state any legal reason coherently for the claim of reversible error, or explain why those legal reasons would support the claim of reversible error in the context of the case.  Yount fails to challenge a particular legal ruling of the trial court by claiming the trial court erred in "finding [Yount] guilty" because it challenges the ultimate result of the trial, not a particular legal ruling by the trial court. *See **Sprueill v. Lott***, 676 S.W.3d 472, 477 (Mo. App. S.D. 2023) (quoting ***Barnett v. Rogers***, 400 S.W.3d 38, 48 (Mo. App. S.D. 2013)) (holding that a point is defective when "its error allegations challenge the ultimate results of the case instead of a particular ruling of the trial court").  Moreover, failure to follow the required construction of the points relied on leaves us to speculate about the specific legal rulings that Yount challenges, what legal reasons he relies upon to support his claims of error, and why, in the context of the case, his legal reasons support his claims of error.

> A deficient point relied on requires the respondent and appellate court to search the remainder of the brief to discern the appellant's assertion and, beyond causing a waste of resources, risks the appellant's argument being understood or framed in an unintended manner. [*Scott*, 510 S.W.3d at 892.] "A point relied on which does not state 'wherein and why' the trial court . . . erred does not comply with Rule 84.04(d) and preserves nothing for appellate review." *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005).

***Lexow***, 643 S.W.3d at 505.  "[A]n appellate court's role is to review specifically challenged trial court rulings, not to sift through the record to detect possibly valid arguments."  *Marvin*, 682 S.W.3d at 797 (quoting ***Geiler v. Liberty Ins. Corp.***, 621 S.W.3d 536, 547 (Mo. App. W.D. 2021)).

### *Yount's Argument*

Yount's arguments in Points II and III do not comply with Rule 84.04(e), which requires, "The argument shall substantially follow the order of 'Points Relied On' . . .

6

[f]or each claim of error, the argument shall also include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." "An argument must explain why, in the context of the case, the law supports the claim of reversible error. It should advise the appellate court how principles of law and the facts of the case interact." *In re Marriage of Fritz*, 243 S.W.3d 484, 487 (Mo. App. E.D. 2007). Yount's brief fails to clearly state the applicable standards of review and proper preservation statements. In Points II and III, Yount "adopts the standard of review" from his Points I and II "as it equally applies" to Points II and III. In Point II, he erroneously cites the standard of review for the denial of a motion for judgment of acquittal, but seemingly challenges the sufficiency of the information in the argument portion of the point. *See id.* (holding that a concise statement of the applicable standard of review for *each point* is required by Rule 84.04(e), and incorporating inapplicable standards of review by reference violates Rule 84.04(e)). As to Point III, he only "adopts the standard of review" from Points I and II, but the point is seemingly another challenge to the sufficiency of the information. Yount also fails to apply any standard of review to the analysis of the law and facts. Thus, neither point, through the argument, preserves anything for review.

"An appellant's failure to include the applicable standard of review or demonstrate preservation of the alleged errors as required by Rule 84.04(e) is grounds for dismissal." *Hutcheson v. Dep't of Soc. Servs., Fam. Support Div.*, 656 S.W.3d 37, 43 (Mo. App. E.D. 2022) (citing *Young v. Mo. Dep't of Soc. Servs.*, 647 S.W.3d 73, 77-78 (Mo. App. E.D. 2022)). "[D]eficient briefing runs the risk of forcing this Court to assume the role of advocate by requiring us to sift through the legal record, reconstruct

7

the statement of facts, and craft a legal argument on the appellant's behalf." *Id.* at 41

(quoting *Freeland v. Div. of Emp. Sec.*, 647 S.W.3d 22, 26 (Mo. App. W.D. 2022)).

This we cannot do. *See Thummel*, 570 S.W.2d at 686 ("It is not the function of the

appellate court to serve as advocate for any party to an appeal.").

Even though Yount's Point I is deficient, an "[a]ppellant's sufficiency of evidence

claim is automatically preserved for appellate review." *State v. Baker*, 618 S.W.3d 551,

554 (Mo. App. E.D. 2020) (citing *State v. Claycomb*, 470 S.W.3d 358, 361 (Mo. banc

2015)); *see also Z.G. v. Juv. Officer*, 702 S.W.3d 262, 268 (Mo. App. W.D. 2024)

(quoting *Interest of J.M.W.*, 676 S.W.3d 81, 87 (Mo. App. E.D. 2023)) ("We review a

sufficiency-of-the-evidence challenge on the merits, not as plain error, regardless of

whether the sufficiency claim was preserved in the circuit court or adequately briefed on

appeal."). While Points II and III are also deficient, Rule 30.20 provides that allegations

of error not properly briefed shall not be considered by the appellate court "except errors

respecting the sufficiency of the information or indictment, verdict, judgment or

sentence." Although it is certainly hard to decipher these points due to their deficiencies,

to the extent they challenge the sufficiency of the information, we limit our review of

these points to that basis only. Because any alleged error regarding the sufficiency of the

information was not preserved, our review is limited to plain error review.

### Factual Background and Procedural History

*The Charging Document*

Yount was charged by Felony Information on December 30, 2014, with statutory

sodomy in the first degree and child molestation in the first degree for sexual acts he

8

allegedly perpetrated against a minor victim ("Victim").  The initial Felony Information

included the following charges:

COUNT I
. . . .

The Prosecuting Attorney of the County of Greene, State of Missouri, charges that [Yount], in violation of Section 566.062, RSMo, committed the felony of statutory sodomy in the first degree, punishable upon conviction under Section 566.062, RSMo, in that on or between October 9, 2000 and October 8, 2004, in the County of Greene, State of Missouri, [Yount] had deviate sexual intercourse with [Victim], who was then less than twelve years old, to wit:  by having [Victim] place [Victim]'s hand on [Yount]'s penis.

COUNT II
. . . .

The Prosecuting Attorney of the County of Greene, State of Missouri, charges that [Yount], in violation of Section 566.067, RSMo, committed the class B felony of child molestation in the first degree punishable upon conviction under Section 558.011, RSMo, in that on or between October 9, 2000 and October 8, 2004, in the County of Greene, State of Missouri, [Yount] subjected [Victim] who was then less than fourteen years old to sexual contact, to wit:  by rubbing [Yount]'s penis against [Victim]'s body.

The State filed a Motion for Leave to Amend Felony Information on January 25,

2019.  The Amended Felony Information extended the date range of the crime from

October 8, 2004, to October 8, 2006, for both charges, stating:

COUNT I
. . . .

The Prosecuting Attorney of the County of Greene, State of Missouri, charges that [Yount], in violation of Section 566.062, RSMo, committed the felony of statutory sodomy in the first degree, punishable upon conviction under Section 566.062, RSMo, in that on or between October 9, 2000 and October 8, 2006, in the County of Greene, State of Missouri, [Yount] had deviate sexual intercourse with [Victim], who was then less than twelve years old, to wit:  by having [Victim] place [Victim]'s hand on [Yount]'s penis.

9

COUNT II

. . . .

      The Prosecuting Attorney of the County of Greene, State of Missouri, charges that [Yount], in violation of Section 566.067, RSMo, committed the class B felony of child molestation in the first degree punishable upon conviction under Section 558.011, RSMo, in that on or between October 9, 2000 and October 8, 2006, in the County of Greene, State of Missouri, [Yount] subjected [Victim] who was then less than fourteen years old to sexual contact, to wit: by rubbing [Yount]'s penis against [Victim]'s body.

The trial court granted the State's motion "over [Yount's] objection" and the Amended Felony Information was filed on January 26, 2019.[2] The case proceeded to jury trial in June of 2019 resulting in a mistrial. On April 29, 2024, the case proceeded to a bench trial with the Amended Felony Information in place with no objection to proceeding forward on that information.

*Victim's Testimony*

Victim testified to the following at trial:

---

[2] While the trial court's docket entry makes reference to the Amended Felony Information being filed over Yount's objection, and the State makes reference in the trial transcript to the issue of the "time frame" being "extensively litigated" prior to the earlier trial before a different judge, Yount fails to supply any information at all regarding the purported objection and any necessary record to support preservation of his claims on appeal. We are precluded from determining that the claims he now raises on appeal regarding the sufficiency of the information were preserved for appeal, and we will presume these claims are not preserved. "Defendant, as the appellant, has the burden of demonstrating trial court error." ***State v. Chowning***, 866 S.W.2d 165, 169 (Mo. App. S.D. 1993). "This burden includes supplying the appellate court with a sufficient record to review the point." ***Id.*** "Failure to supply a sufficient record to permit determination of the issues presented results in the appellate court being unable to determine if the trial court erred" and thus "requires that the point be denied." ***Id.***

Victim was adopted by Yount and his wife ("Mother") when she was "around 3" years old. When Victim was approximately six years old, the family adopted another girl, who became Victim's sister. Around this time, Victim and the family moved to an address on South Warren Avenue in Greene County.

When Victim was "about 7 years old[,]" Yount would have her "play these games" by "driving a car [or] riding on a horse." These "games" included Victim "straddl[ing] over" Yount and "moving" or "bouncing on him[.]" At first, Yount had a pillow placed over his lap, but on the second occurrence the pillow was removed.

During the second incident, when the pillow was removed, Victim did the "same motions of the bouncing"; however, Victim recalled "feeling like [she] shouldn't be doing that" and informing Yount that she was "done playing and [she] didn't want to do it anymore" as she tried to get off his lap. Yount told Victim that she "was doing okay, [she] was doing a good job, and he then encouraged [her] to use [her] hands." Yount placed Victim's hands "around his penis and demonstrated how to stroke up and down." Victim recalled this occurring while Yount's pants were "[d]own around his legs." He encouraged Victim to continue, telling her "[i]t's okay. You can do this."

Victim recounted another incident which occurred around the same time. She remembered "standing up against the bed, kind of wrestling" with Yount when her younger sister entered the room. Yount told Victim's younger sister that he and Victim were "just wrestling and to go play in the playroom." As Yount and Victim were in a "wrestling position," Yount placed his penis between Victim's legs to use her genitalia and the bed "as friction" and ejaculated on her stomach. After the incident, Yount asked

11

Victim not to tell anyone because the "police would come take [Victim] away and [she] would never see them again."

When Victim was approximately 13 or 14, she became worried about her younger sister. In considering the safety of her sister, and with the encouragement from her church friends, Victim informed Mother of the incidents. After being informed, Mother brought Victim to the master bedroom to talk. Victim waited on the bed as her parents had a discussion in the en suite bathroom; when they left the bathroom, Yount "was sobbing" and told Victim "that he was hoping [she] would never remember."

During this time, Victim's family was involved in the Abundant Life Church ("the church"), where Yount was a youth leader. Victim's parents set up a meeting between Victim and the pastor at the church, B.D. Victim believed Mother had already informed B.D. of the specific details regarding the events. During a subsequent Sunday church service, Yount told the congregation he would be stepping down from his leadership position because "he had sinned in his family."

After Victim's disclosure, her home life became "significantly worse." Mother became physical with Victim, and "treated [her] as if [she] had stolen her man[.]" On one occasion, Yount and Mother told Victim that Yount "would go to jail," Victim "would never see" her sister again, and Victim "would go to a girl's home" if she told anyone about the alleged abuse. Yount and Mother had also discussed homeschooling Victim, telling her that they would "isolate [her] for so long" that "those people that [she] thought were her] friends" would forget who she was.

When Victim was 16, she informed her high school counselor of the alleged abuse. Victim waited at the school for three hours until the authorities arrived. Victim

and her sister were removed from the home, and Victim lived in a series of relatives' homes and "group" homes. Victim was separated from her sister, and was not allowed to see her.

*Other Testimony*

L.W., who was a member of the church from 2000-2017, testified that Victim and her daughter were good friends. L.W. attended a disciplinary meeting at the church in which Yount was removed from his role working with youth due to Victim's allegations. L.W. stated that Yount "acknowledged what he had done" and "[her] best recollection" was that Yount admitted to the abuse in that meeting. L.W. also testified to speaking to law enforcement sometime between 2009 and 2011 about the alleged abuse.

R.B., another member at the church, testified regarding the Wednesday night church meeting in which Yount admitted to inappropriate behavior. R.B. stated that Yount looked "sorry and emotional and probably embarrassed."

Deputy A.F. was the detective assigned to Victim's case after Victim disclosed the abuse to her school counselor. Victim and her sister were initially placed with maternal grandparents until forensic interviews could be completed. Yount and Mother initially agreed to Victim being interviewed at the Child Advocacy Center, but when A.F. arrived to complete the interview, she was informed that they would no longer allow Victim to be interviewed. When Mother confirmed this refusal, Victim was taken into State custody.

Deputy A.F. attempted to interview several members of the church regarding a meeting in which Yount had discussed the alleged abuse. However, multiple members declined to discuss the meeting, and one stated she "wanted to" provide a statement, but

"felt that to protect her career and her family and the church, that she should get an attorney or have an attorney."  L.W. and R.B. did provide statements to Deputy A.F.

During her investigation, Deputy A.F. learned that Victim also claimed she was physically abused.  Victim's sister also reported "some physical contact with the parents."

Yount testified and admitted that Mother told him that Victim disclosed the sexual abuse to her.  Yount confirmed that they took the allegations to the church, and he was asked to step down from his youth leadership position.  Yount also confirmed that he announced he would be stepping down at a church service, but claimed that it was based on the "way [he and Mother] disciplined" Victim.  Yount denied admitting the sexual abuse occurred.  Yount testified that he and Mother "spanked [Victim] with a belt which left welts on her which is why the pastor asked us to step down.  I was sorry for that.  I got angry and I overstepped the boundaries, but I never got in front of the church and said I sexually abused my daughter."

At the sentencing hearing, three victim impact statements were read to the trial court by Victim, her aunt, and her uncle.  After these statements were read in open court, the trial court stated that it did not "believe anyone in their right mind could find [Yount] not guilty."  Yount was sentenced to 21 years' imprisonment for statutory sodomy and 10 years' imprisonment for child molestation, each sentence to run concurrently with the other.

**Point I**

In Point I, Yount contends the State did not present sufficient evidence to convict him of either statutory sodomy or child molestation in the first degree.  We disagree.

14

*Standard of Review*

In reviewing the sufficiency of the evidence, our inquiry is "limited to whether the State has introduced sufficient evidence from which a reasonable [fact-finder] could have found each element of the crime beyond a reasonable doubt." ***State v. Smith***, 679 S.W.3d 599, 600 (Mo. App. S.D. 2023) (quoting ***State v. Hunt***, 451 S.W.3d 251, 257 (Mo. banc 2014)). This Court accepts all evidence and reasonable inferences favorable to the verdict as true, and disregards all contrary evidence and inferences. ***State v. Buell***, 697 S.W.3d 563, 566 (Mo. App. S.D. 2024).

> "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt."

***State v. Wright***, 382 S.W.3d 902, 903 (Mo. banc 2012) (quoting ***State v. Miller***, 372 S.W.3d 455, 458 (Mo. banc 2012)). The reliability, credibility, and weight of witness testimony are for the factfinder to determine, and it is within the factfinder's authority to believe all, some or none of a witness's testimony in making this decision. ***State v. Ware***, 447 S.W.3d 224, 227 (Mo. App. S.D. 2014). We act not as a "super juror," but instead grant great deference to the trier of fact. ***State v. Blacksure***, 690 S.W.3d 629, 633 (Mo. App. S.D. 2024).

*Analysis*

In determining whether the State presented sufficient evidence to sustain a conviction, "we consider each element of the crime." ***McAllister v. State***, 643 S.W.3d 124, 132 (Mo. App. E.D. 2022) (quoting ***State v. Johnson***, 479 S.W.3d 762, 768 (Mo. App. E.D. 2016)). "A person commits the offense of statutory sodomy in the first degree

15

if he or she has deviate sexual intercourse with another person who is less than fourteen years of age." Section 566.062(1). Deviate sexual intercourse is defined as

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person[.]

*McAllister*, 643 S.W.3d at 132 (quoting section 566.010(1)).

The offense of child molestation in the first degree occurs when "[the accused] subjects another person who is less than fourteen years of age to sexual contact." Section 566.067.1. Sexual contact is "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person[.]" Section 566.010(3).

The crux of Yount's argument to support his claims is that the evidence is insufficient because the "case rests on the testimony of the alleged victim[,]" that "[n]o witness observed the defendant assault the alleged victim[,]" that "the defendant confessed to nothing[,]" and that there was "a significant period of time in between the alleged abuse and the disclosure." In giving weight to Yount's arguments, we would be ignoring our standard of review. This Court defers to the trial court's judgment in determining witness credibility. *Citizens for Ground Water Prot. v. Porter*, 275 S.W.3d 329, 347 (Mo. App. S.D. 2008). The trial court acts within its discretion to believe none, part, or all of the testimony of a witness. *Doe v. Mo. State Highway Patrol Crim. Recs. Repository*, 474 S.W.3d 171, 174 (Mo. App. E.D. 2015). The testimony of one witness may be sufficient to sustain a conviction. *State v. Alexander*, 505 S.W.3d 384, 395 (Mo. App. E.D. 2016).

16

The record contains sufficient evidence to support Yount's convictions for both sodomy in the first degree and child molestation in the first degree. Victim testified to the alleged touching at trial. Victim stated that the touching began as "playing [a] game," when she was seven years old, where she "straddled over [Yount]" and was "bouncing on him . . . like a horse." Victim testified that the first time this occurred, there was a pillow over Yount's lap, but the pillow was removed the second time. Victim testified that she told Yount she wanted to stop; however, he instructed her to continue and "encouraged [her] to use [her] hands. He put [her] hands around his penis and demonstrated how to stroke up and down" while Yount's pants were "[d]own around his legs."

Victim testified that on a different occasion, when she was seven or eight years old, Yount was standing behind her and placed his penis in between her legs. After "kind of wrestling," Victim stated that Yount ejaculated on her stomach. Victim testified that after this incident, Yount asked her not to tell anyone because "police would come take [her] away and [she] would never see them again."

Victim also testified to telling Mother about the incidents, and recounted being "called upstairs to talk with [Mother and Yount]" "in their master [bed]room" to discuss the matter with her parents. Victim testified that Mother and Yount went in the en suite bathroom to talk, and when they came out of the bathroom Yount was "sobbing" and told Victim "that he was hoping [she] would never remember" what happened. Victim additionally testified to Yount admitting to inappropriate behavior in front of the church and stepping down from ministry because he had "sinned in his family." After Victim disclosed the abuse to Mother and Yount stepped down from church leadership, Victim

17

also testified that Yount said he would "go to jail" if she ever told anyone what he had done.

It was well within the trial court's discretion to believe Victim's testimony alone to find that Yount committed a deviate sexual act with an individual under the age of fourteen, as is required to find him guilty of statutory sodomy in the first degree and subjecting another person who is less than fourteen years of age to sexual contact, as required to find him guilty of child molestation in the first degree.

The trial court could have also considered the other witnesses' testimony in determining Victim's credibility and confirming her testimony. Witnesses L.W. and R.B., both members of the church at the time of the incident, testified to Yount admitting abuse in front of the church. L.W. testified that she was present during the disciplinary meeting, about which she stated Yount "did admit to abuse in that setting" and "acknowledged what he had done." R.B. testified that while addressing the congregation, Yount admitted that "something inappropriate" had happened and that Yount was very upset, emotional, and embarrassed. Additionally, Deputy A.F. testified that L.W. and R.B. provided statements to aid in her investigation. Deputy A.F. also testified that while several members refused to discuss the incident, one member said she "wanted to" provide a statement, but felt she needed to get an attorney to "protect her career and her family and the church[.]"

Thus, in viewing the evidence and inferences therefrom in a light most favorable to the verdict, there is sufficient evidence to convict Yount of both statutory sodomy and child molestation in the first degree. Point I is denied.

18

**Points II and III**

From what this Court can decipher from the wholly deficient briefing with respect to Points II and III, Yount attempts to challenge the sufficiency of the Amended Felony Information. To the extent Yount contends the Amended Felony Information was insufficient in that the date range provided therein was overly broad and did not give him notice of the specific allegations against him, we address these claims herein, and determine he fails to show manifest injustice entitling him to plain error review.[3]

*Standard of Review*

"Our review of the sufficiency of an indictment or information to state an offense is a question of law that we review *de novo*." **State v. Minnick**, 677 S.W.3d 556, 558 (Mo. App. W.D. 2023) (citing **State v. Metzinger**, 456 S.W.3d 84, 89 (Mo. App. E.D. 2015)). When engaging in *de novo* review, we exercise independent judgment to correct errors and the trial court is given no deference. **Standifer v. Suntrup Hyundai, Inc.**, 695 S.W.3d 302, 304-05 (Mo. App. E.D. 2024).

Because of the briefing deficiencies present in Points II and III, and the fact that his claims are not preserved otherwise for our review in that we cannot determine from the record if he objected to the sufficiency of the information at any time before or during

---

[3] Yount frames Point II claiming trial court error in denying his oral motion for judgment of acquittal made at the close of the State's evidence. While this is not his actual claim as is apparent through his argument on his point, if this was his asserted error, it would fail. Because Yount proceeded to put on evidence after the close of the State's evidence, he waived his claim of error. "A defendant waives any claim of error in the denial of his motion for judgment of acquittal at the close of the State's evidence when he subsequently presents evidence on his behalf." **State v. Hansen**, 660 S.W.3d 45, 49 (Mo. App. S.D. 2023) (quoting **State v. Gaines**, 316 S.W.3d 440, 452 (Mo. App. W.D. 2010)).

19

trial, our analysis of these points is limited to plain error review under Rule 30.20. "Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error, and said claim . . . is evaluated by this Court's plain error framework without exception." *State v. Brandolese*, 601 S.W.3d 519, 530 (Mo. banc 2020) (emphasis omitted). "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Phillips*, 687 S.W.3d 642, 647 (Mo. banc 2024) (quoting *Brandolese*, 601 S.W.3d at 526). The party seeking plain error review bears the burden of proving plain error occurred and that it resulted in manifest injustice or miscarriage of justice. *State v. Pendergraft*, 688 S.W.3d 762, 766 (Mo. App. W.D. 2024) (citing *State v. Ray*, 407 S.W.3d 162, 170 (Mo. App. E.D. 2013)). To be entitled to relief, "the appellant must show 'the error was outcome determinative.'" *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

Yount does not request plain error review of these points, nor does he do a plain error analysis or make any attempt to facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.

*Analysis*

"The substantial rights an information is designed to further are: (1) to inform the defendant of the charges against him so that he may adequately prepare a defense, and (2) to protect the defendant against any double jeopardy." *Stark v. State*, 644 S.W.3d 583, 588 (Mo. App. W.D. 2022) (quoting *State v. Nelson*, 505 S.W.3d 437, 443 (Mo. App. W.D. 2016)). The charging information is sufficient if "it states the essential elements of

20

the offense charged so that the defendant is adequately informed of the charge against him and the final disposition of the charge will constitute a bar to further prosecution for the same offense." *Miller*, 372 S.W.3d at 467 (quoting *State v. Mitchell*, 611 S.W.2d 223, 225 (Mo. banc 1981)). "[T]he charging [information] 'must be specific enough [as to the timing of the alleged offenses] to ensure notice to the defendant . . . .'" *State v. Celis-Garcia*, 420 S.W.3d 723, 729 (Mo. App. W.D. 2014) (quoting *Miller*, 372 S.W.3d at 464).

Here, Yount argues that the date range of the amended information was overly broad and thus insufficient to place him on notice of the alleged offenses. "The claim that an indictment is not specific enough because the dates are too broad is often made in sexual abuse cases." *State v. Sprinkle*, 122 S.W.3d 652, 659 (Mo. App. W.D. 2003) (citing *State v. Weiler*, 801 S.W.2d 417, 420 (Mo. App. W.D. 1990) (noting that the complaint that dates are not specific is often raised in cases of sexual offenses against children and ruled against defendants time after time)). "Courts have long held that '[t]ime is not essential in child sexual abuse cases because it can be impossible to ascertain specific dates of the sexual abuse.'" *Celis-Garcia*, 420 S.W.3d at 729 (quoting *Miller*, 372 S.W.3d at 464). "The reason for leeway in cases charging sexual abuse and sexual intercourse with minors is that 'children who are victims of abuse may find it difficult to recall precisely the dates of offenses against them months or even years after the offense has occurred.'" *Id.* (quoting *State v. Hoban*, 738 S.W.2d 536, 541 (Mo. App. E.D. 1987)). "Were that not the rule, a 'defendant would simply have to make the assertion of alibi in order to escape prosecution once it became apparent that a child was

21

confused with respect to the date of sexual assault.'" *Id.* (quoting *Hoban*, 738 S.W.2d at 541).

> [I]n these cases, the "trier of fact should be allowed to weigh the witness's inability to specify the exact day and time of the alleged crime, and the subsequent inability of the defendant to establish an alibi defense over so long a period of time, in determining whether the defendant is guilty beyond a reasonable doubt."

*Id.* (quoting *Hoban*, 738 S.W.2d at 541-542).

> "Because time is not an essential element of the crime, the [S]tate is not confined in its evidence to the precise date stated in the Amended Information, but may prove the offense to have been committed on any day before the date of the information and within the period of limitation."

*State v. Cannafax*, 344 S.W.3d 279, 287 (Mo. App. S.D. 2011) (quoting *State v. Bunch*, 289 S.W.3d 701, 703 (Mo. App. S.D. 2009)).

Here, Yount fails to establish substantial grounds for believing that a manifest injustice or miscarriage of justice occurred based on the date ranges alleged in the Amended Felony Information. Yount fails to provide any argument showing how the date range in the Amended Felony Information resulted in a manifest injustice, and thus does not show manifest injustice or miscarriage of justice occurred as a result of the alleged error. The Amended Felony Information in question charged Yount with statutory sodomy in the first degree which occurred "on or between October 9, 2000 and October 8, 2006" when Victim was "less than twelve years old[.]" It further charges Yount with child molestation in the first degree for subjecting Victim to sexual contact when she was "less than fourteen years old" "on or between October 9, 2000 and October 8, 2006[.]" The evidence established Victim was born in 1996 and she testified that she was "about 7 years old" when Yount put her hand "around his penis and demonstrated how to stroke up and down" in the master bedroom in the Warren Avenue house, which

22

they moved to when she was "[a]bout 6 or 7[.]" Victim testified to another occasion occurring in that same timeframe, when she was "standing up against the bed, kind of wrestling" in the same master bedroom when her little sister walked in. That incident took place within "a year or two maybe" of when her little sister was adopted when Victim was six. In this incident, Yount put his penis between Victim's legs to use her genitalia and the bed "as friction," and "ended up ejaculating" on Victim's stomach. From that evidence, the factfinder could find that the events occurred in 2003 or 2004, well within the 2000-2006 timeframe alleged in the Amended Felony Information.

As time is not of the essence in child sexual offense cases, and the charging document here contains all essential elements of the crime, the State was not required to provide a specific date the crimes occurred in the Amended Felony Information. The date ranges provided are adequate to have given Yount notice of the elements of the offense, specifically stating that they occurred between 2000-2006, when Victim was "less than twelve years old" and "less than fourteen years old[.]" Because Yount fails to meet his burden to show manifest injustice or a miscarriage of justice from his second and third claims of error, we decline plain error review. *See **Brandolese***, 601 S.W.3d at 525-26. The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

JACK A. L. GOODMAN, J. – CONCURS

BECKY J. WEST, J. – CONCURS